ELLEN S. PODGOR *v.* INDIANA UNIVERSITY, THE TRUSTEES OF INDIANA UNIVERSITY, BOTH INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITY, THE STANDING COMMITTEE ON RESIDENCY, BOTH INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITY, M. D. SCHERER, UNIVERSITY REGISTRAR, BOTH INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, AND VIRGIL HUNT, UNIVERSITY ASSISTANT REGISTRAR, BOTH INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY

[No. 2-1276A490. Filed November 6, 1978. Rehearing denied December 11, 1978. Transfer denied April 6, 1979.]

*David M. Hamacher*, of Crown Point, for appellant.

*Stephen Goldsmith, Barnes, Hickam, Pantzer & Boyd*, of Indianapolis, for appellee; Of Counsel, *Cliff K. Travis*, of Bloomington, for appellee.

## CASE SUMMARY

BUCHANAN, C.J. — Plaintiff-Appellant, Ellen S. Podgor (Podgor), appeals from a judgment affirming decisions by the Indiana University Standing Committee on Residency (Standing Committee) regarding her residency classification for fee purposes, claiming Indiana University is without statutory authority to promulgate rules imposing differential tuition fees, the trial court erred in finding substantial evidence to support the classifications and in excluding exhibits 4-27, the rules as written or as applied violate the Equal Protection Clause and the Privileges and Immunities Clause, the rules create an irrebuttable presumption and the rules as written or as applied deny due process of law.

We affirm.

## FACTS

The evidence most favorable to the judgment reveals:

In 1972, while a resident of New York, Podgor was accepted as a student by the Indiana University School of Law at Indianapolis. She was classified as a non-resident for the 1973-74 school year by the Registrar of Indiana University (Registrar) and thus was required to pay higher tuition fees than those imposed on resident students.

During the summer of 1974, Podgor returned to New York, worked as a law clerk and enrolled in a New York law school. She returned to Indianapolis in August, 1974, and commenced classes as a full-time, non-resident student. During the fall of that year Podgor voted by absentee ballot in the New York election. After January 1, 1975, Podgor was employed as a law clerk with an Indianapolis law firm.

In August, 1975, at the outset of her third year, Podgor applied to the Registrar for classification as a resident student. She did not receive written notification of the Registrar's decision, which is required by the University rules.[1] Instead, she received a letter from the Standing Com-

---

1. University Rule 8 provided:

A student who is not satisfied by the determination of the Registrar has the right to lodge a written appeal with the Standing Committee on Residence within 30 days of receipt of written notice of the Registrar's determination, which Committee shall review

mittee affirming the Registrar's determination that she remained a nonresident student for fee purposes.

On September 24, 1975, Podgor filed suit in Pike Township Justice of the Peace Court alleging she had been denied procedural due process. Upon learning that Podgor had not received written notification from the Registrar, the Standing Committee revoked its prior decision and provided her with a hearing. Podgor, in turn, dismissed the pending suit. At the hearing Podgor objected to the proceeding on the ground that she had been denied procedural due process and then presented the following evidence: she returned to Indiana in August, 1974, with the intent of making Indiana her home; after January 1, 1975, her income was derived solely from within the State; after August, 1974, she paid state taxes only in Indiana; she was registered to vote in Indiana; she was engaged to an Indiana resident, who was employed by a law firm in Crown Point, Indiana, pending his graduation from law school; she had been offered a position in the same law firm; she owned no real property in Indiana or elsewhere and all personal property was located within the State; she had bank accounts within the State; since August, 1974, she had been employed within the State; she intended to take only the Indiana bar examination; she had dropped from a full-time to a part-time student.

When Podgor received notification that her request for a change in status had been denied, she instituted the present suit in Marion Superior Court, naming Indiana University, the Trustees of Indiana University, the Standing Committee, M. D. Scherer and Virgil Hunt as defendants (hereinafter I.U.), and alleged that the rules as written or as applied violated the Equal Protection Clause and the Privileges and Immunities Clause, created an irrebuttable presumption of nonresidence and denied her procedural due process.

Podgor attempted to obtain resident student status a second time on December 17, 1975. Initially she was informed that a second application was unnecessary, however, this decision was revoked and Podgor

the appeal in a fair manner and shall afford to the student a personal hearing upon written request. A student may be represented by counsel at such hearing. The Committee shall report its determination to the student in writing. If no appeal is taken within the time provided herein, the decision of the Registrar shall be final and binding.

was given a hearing before the Standing Committee. Podgor presented the following additional evidence:    she was employed as an instructor at Indiana University; she would be married to an Indiana resident on December 28, 1975; her husband's automobile was registered within the State; she had an Indiana driver's license.

At the conclusion of the second hearing, the Standing Committee found that Podgor's predominant purpose for being in Indiana had changed and therefore she would be eligible for resident student tuition rates twelve months from the residency qualifying date, i.e. in December, 1976, pursuant to the University Rule 4.

University Rule 4 provides in pertinent part:

A person classified as a nonresident student may show that he or she is exempt from paying the nonresident fee by clear and convincing evidence that he or she has been a resident (see Rule 1 above) of Indiana for the twelve (12) months prior to the first scheduled day of classes of the semester in which his or her fee status is to be changed. Such a student will be allowed to present his or her evidence only after the expiration of twelve (12) months from the Residence Qualifying Date, *i.e.*, the date upon which the student commenced the twelve (12) month period for residence.

Podgor then amended her original complaint to include her second application for residency status.

During the trial, Podgor attempted to admit Exhibits 4-27 over objections by I.U. that there was no foundation laid and the exhibits had no relevance to the subject matter of this action, said objections being sustained by the trial court.

The trial court ruled that the classifications made by the Standing Committee were affirmed and that the University Rules for determination of resident and non-resident student status were constitutional in all respects. Podgor appeals.

## ISSUES

Six issues are presented for review:

1. Does I.U. have the statutory authority to promulgate rules which determine resident and non-resident student status and to impose differential tuition fees accordingly?

2. Was the trial court's affirmance of Podgor's classification supported by substantial evidence?

3. Did the trial court err in excluding Exhibits 4-27?

4. Was Podgor denied due process of law?

5. Does the durational residency requirement violate the Privileges and Immunities Clause of the Indiana Constitution or the Equal Protection Clause of the United States Constitution?

6. Do the University rules as written or applied create an irrebuttable presumption?

The contentions of each party are treated with the resolution of each issue below.

## *DECISION*

ISSUE ONE—*Statutory Authority*

> Does I.U. have the statutory authority to promulgate rules which determine resident and non-resident student status and to impose differential tuition fees accordingly?

PARTIES' CONTENTIONS — Podgor contends that I.U. did not have the requisite statutory authority to adopt rules which impose differential tuition fees on resident and non-resident students nor did the General Assembly of the State of Indiana acquiesce in the system promulgated by I.U. for determining resident and non-resident student status. I.U. responds that it acted pursuant to a grant of statutory authority and, alternatively, that the General Assembly's inaction constitutes acquiescence in the University Rules.

CONCLUSION—Legislative enactment did grant I.U. the requisite statutory authority to promulgate rules which determine resident and non-resident student status and impose differential tuition fees accordingly.

Innumerable Indiana cases have held that when the legislature defines its policy and prescribes a standard by means of legislative enactment, it is not an improper delegation to leave to the administrative agency the task of formulating reasonable rules and regulations. *State ex rel. Standard Oil Co. v. Review Board of Indiana Employment Security* (1952),

230 Ind. 1, 101 N.E.2d 60; *Hollingsworth v. State Board of Barber Examiners* (1940), 217 Ind. 373, 28 N.E.2d 64; *Financial Aid Corp. v. Wallace* (1939), 216 Ind. 114, 23 N.E.2d 472 (and cases cited therein); *Schakel v. Review Board of Indiana Employment Security* (1968), 142 Ind. App. 475, 235 N.E.2d 497.

As stated in *Financial Aid Corp. v. Wallace, supra*:

Unless an administrative officer or department is permitted to make reasonable rules and regulations, it would be impossible in many instances to apply and enforce the legislative enactments, and the good to be accomplished would be entirely lost.

*Id.* at 121, 23 N.E.2d at 475.

IND. CODE 20-12-1-2 vests the I.U. Board of Trustees with broad powers, those pertinent to this appeal being:

(e) To prescribe the fees, tuition and charges *necessary* or convenient to the furthering of the purposes of the institution and to collect the same;

(f) To prescribe the conditions and standards of admission of students upon *such bases as are in its opinion in the best interests of the state and the institution*;
(emphasis added)

The emphasized portions of the statute would appear to *expressly* vest I.U. with the authority to promulgate reasonable rules which impose differential tuition fees, if such are "necessary" or "in the best interests of the state and the institution."

The evidence reveals that the State of Indiana bountifully bestows on its system of higher education Two Dollars ($2) for every dollar ($1) spent by students. By reason of such munificence it would seem reasonable for I.U. to promulgate rules which require non-resident students to pay higher tuition fees.

Also there is IND. CODE 20-12-1-1, which provides in pertinent part:

The powers, duties and responsibilities referred to by this act are not intended to include all powers, duties and responsibilities of the several boards and nothing contained in this act shall be deemed to diminish or abrogate any other of the powers, duties or respon-

sibilities of the respective boards specifically conferred by statute or *properly implied* thereby.

(emphasis added)

So, if the authority to promulgate rules which impose differential tuition fees is not express under IND. CODE 20-12-1-2(e)(f), it may readily be implied under IND. CODE 20-12-1-1.

ISSUE TWO — *Substantial Evidence*

Was the trial court's affirmance of Podgor's classification supported by substantial evidence?

PARTIES' CONTENTIONS — Podgor contends the trial court erred in finding that the Standing Committee's classifications were based on substantial evidence. I.U.'s allegations are to the contrary.

CONCLUSION — The ultimate fact determined by the Standing Committee in each hearing could be reasonably inferred from the undisputed basic facts.

The determination of whether a non-resident student's predominant purpose in coming to Indiana has changed from that of obtaining an education is an *ultimate* fact to be inferred from *basic* facts found by the Standing Committee as set forth in University Rule 4.[2]

---

2. University Rule 4 lists the following basic facts to be found by the Standing Committee:

a. The residence of a student's parents or guardians.

b. The situs of the source of the student's income.

c. To whom a student pays his or her taxes, including property taxes.

d. The State in which a student's automobile is registered.

e. The State issuing the student's driver's license.

f. Where the student is registered to vote.

g. The marriage of the student to a resident of Indiana.

h. Ownership of property in Indiana and outside of Indiana.

i. The residence claimed by the student on loan applications, federal income tax returns, and other documents.

It is these *basic facts which are subject to the substantial evidence test; the ultimate* facts derived from these *basic* facts need only be reasonable. As stated by Judge Staton in *L. S. Ayres & Co. v. Indianapolis Power & Light Co.* (1976), 169 Ind.App. 653, 351 N.E.2d 814, 823; and *City of Evansville v. Southern Indiana Gas & Electric Co.* (1975-1976), 167 Ind.App. 472, 339 N.E.2d 562, 572-73:

> It is well established that the substantial evidence test cannot be utilized to assay the "reasonableness" of the conclusions of ultimate fact inferred by an agency from its findings of basic fact. *See, e.g., NLRB v. Babcock & Wilcox Co.* (1956), 351 U.S. 105; *NLRB v. Truitt Mfg. Co.* (1956), 351 U.S. 149. Ultimate facts may be described generally as factual conclusions derived from the basic facts; . . . . *Since findings of ultimate fact represent inferences drawn by the agency, they are not susceptible to scrutiny for evidentiary support in the record, but the reasonableness of the agency's inference is a question appropriate for judicial determination—a "question of law."*
>
> It is equally well settled that in determining the "substantiality" of the evidence, the reviewing court must consider the evidence in opposition to the challenged finding of basic fact as well as the evidence which tends to support the finding. As Justice Frankfurter said: "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB* (1951), 340 U.S. 474, 488.
> (emphasis added)

The basic facts before the Standing Committee were undisputed, that

---

j.    The place of the student's summer employment, attendance at summer school, or vacation.

k.    The student's future plans including committed place of future employment or future studies.

l.    Admission to a licensed profession in Indiana.

m.    Membership in civic, community and other organizations in Indiana or elsewhere.

n.    All present and intended future connections or contacts outside of Indiana.

o.    The facts and documents pertaining to the person's past and existing status as a student.

p.    Parents' tax returns and other information, particularly when emancipation is claimed.

is, Podgor and the Standing Committee agreed on Podgor's stance regarding each of the sixteen (16) basic facts enumerated in University Rule 4. So Podgor is in no position to claim they were not supported by substantial evidence.

Podgor is urging us to apply the substantial evidence test to the ultimate fact, (whether Podgor's predominant purpose in coming to Indiana had changed), but if the basic facts are supported by substantial evidence our judicial function is merely to determine if the ultimate fact may reasonably be inferred from the basic facts. *L. S. Ayres & Co. v. Indianapolis Power & Light Co., supra; City of Evansville v. Southern Indiana Gas & Electric Co., supra.*

The ultimate fact inferred by the Standing Committee at the conclusion of each hearing was derived from basic facts both supporting and weighing against their conclusion. Therefore, we do not substitute our conclusion for that of the Standing Committee, but merely conclude that their inferences were reasonable. *See DeMichaeli v. Sanders* (1976), 167 Ind.App. 669, 340 N.E.2d 796.

ISSUE THREE — *Exclusion of Evidence*

Did the trial court err in excluding Exhibits 4-27?

PARTIES CONTENTIONS — Podgor alleges that the objections to the admission in evidence of Exhibits 4-27 (which do not appear in the record) were too general and, alternatively, that a proper foundation was laid for their admission. I.U. responds that Exhibits 4-27 were irrelevant and additionally that Podgor made no offer to prove, therefore, any error is waived.

CONCLUSION — Podgor has waived any error in the exclusion from evidence of Exhibits 4-27 by failure to make an offer to prove.

It is axiomatic that no explanatory offer to prove is necessary where an exhibit sought to be admitted is relevant on its face. However, where the exhibit is not patently relevant, an offer to prove must be made in order to preserve on appeal the alleged error in its exclusion. *The Grover and Baker Sewing Machine Co. v. Newly* (1877), 58 Ind. 570. *See also Hamm v. Romine* (1884), 98 Ind. 77; 88 C.J.S. § 74 (1955).

Although Exhibits 4-27 were not included in the record, it is apparent that they were in fact the files of other students who had applied for residency classification with the Standing Committee. We do not find these Exhibits to be relevant on their face and hence any error in their exclusion is deemed waived by Podgor's failure to make an offer to prove.

We note that Podgor has complied with IND. R. AP. P. 7.2(C) by filing affidavits supporting her request for the inclusion of the Exhibits in the record, however, in view of our resolution of this issue, we need not submit the omission of the Exhibits to the trial court for resolution.

ISSUE FOUR—*Due Process*

Was Podgor denied due process of law?

PARTIES' CONTENTIONS — Podgor contends that the rules as applied did not afford her due process, first, because she did not receive notice of the Registrar's decision nor was she given an opportunity to be heard during the Standing Committee's original hearing on her classification, and secondly, because the rules as written and as applied create an unascertainable standard. I.U. notes that although Podgor did not receive notice of the Registrar's decision and consequently was not able to participate in the original hearing, the Standing Committee revoked its prior decision and gave Podgor an opportunity to be heard. I.U. does not respond to the contention that the University Rules create an unascertainable standard.

CONCLUSION — Podgor was not deprived of any constitutionally protected property interest prior to the hearing in which she participated, and, the University Rules provide an ascertainable standard which was fairly applied.

A. *Notice and Hearing*

The "opportunity to be heard" is a fundamental requirement of due process under the Fourteenth Amendment to the United States Constitution. If there is "state action" — and the parties agree there is — the right to be heard "must be granted at a meaningful time and in a meaningful way", *Armstrong v. Manzo* (1964), 380 U.S. 545, 552; *see also Fuentes v. Shevin* (1972), 407 U.S. 67, but only if there is a Fourteenth Amendment "liberty" or "property" interest at

stake. *Board of Regents v. Roth* (1972), 408 U.S. 564; *Perry v. Sindermann* (1972), 408 U.S. 593; Note, 48 IND. L.J. 127 (1972). Because Podgor did not present any question as to a liberty interest, our threshhold inquiry is necessarily limited to whether she was deprived of a "property" interest.

"Property interests", protected by procedural due process, "extend well beyond ownership of realty, chattels, or money." 408 U.S. at 571-72. Yet the range of such interests does have boundaries.

> "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests — property interests — may take many forms.

408 U.S. at 576.

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it — he must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."

*Id.* at 577.

*See also Connell v. Higginbotham* (1971), 403 U.S. 207; *Goldberg v. Kelly* (1970), 397 U.S. 254; *Flemming v. Nestor* (1960), 363 U.S. 603; *Slochower v. Board of Education* (1956), 350 U.S. 551; *Wieman v. Updegraff* (1952), 344 U.S. 183; *Town of Speedway v. Harris* (1976), 169 Ind.App. 100, 346 N.E.2d 646.

Property interests are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Thus, the welfare recipients in *Goldberg v. Kelly, supra*, had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them.

And so here, Podgor's claim of entitlement to treatment as a resident student is grounded in I.U.'s rules and regulations, particularly University Rule 4, which provides for classification as a resident student with a lower tuition payment if the applicant can qualify for such treatment.

Having concluded Podgor was entitled to procedural due process because of a cognizable Fourteenth Amendment "property interest", our next step is to determine if procedural due process has been afforded her at a meaningful time.[3] *Fuentes v. Shevin, supra; Armstrong v. Manzo, supra.*

In *Fuentes*, Justice Stewart emphasized the principle that procedural due process must be granted *prior* to the deprivation of the interest at stake:

> If the right to notice and a hearing is to serve its full purpose, then, it is clear that *it must be granted at a time when the deprivation can still be prevented.* . . .

> \* \* \* \* \* \* \*

> This is no new principle of constitutional law. The right to a prior hearing has long been recognized by this Court under the Fourteenth and the Fifth Amendments. Although the Court has held that due process tolerates variances in the *form* of a hearing . . . the Court has traditionally insisted that, *whatever its form, opportunity for that hearing must be provided before* the deprivation at issue takes effect.

*Id.* at 81-82.

---

3. The requirement of a prior hearing depends, in part, on the nature of the penalty imposed. A prior hearing may not be necessary under some circumstances. In *Hill v. Trustees of Indiana University* (1976), 537 F.2d 248, a student received a failing grade for alleged plagiarism absent a hearing which was required by the adopted University procedure. The Court stated:

> The fact that Professor Garnier did not comply with section 3.2(3) of the *Student Code of Conduct* when he gave plaintiff failing grades does not, in itself, constitute a violation of the Fourteenth Amendment. *Nor does the single fact that Indiana University adopted a grievance procedure which provides for a hearing before a plagiarism penalty may be imposed require a court to find that the procedure afforded plaintiff in the present case violated his right to due process.* As the Supreme Court stated in *Mitchell v. W. T. Grant Co.* (1974), 416 U.S. 600, 610, "[d]ue process of law guarantees 'no particular form of procedure; it protects substantial rights.' *N.L.R.B. v. Mackay Co.* (1938), 304 U.S. 333, 351." Not only has the plaintiff failed to allege any facts to show that the remedy afforded him inadequately protected his rights, but our own review of the record indicates that the procedure which the university made available to plaintiff for the purpose of defending the plagiarism charge and failing grades guaranteed him procedural due process.

*Id.* at 252.

Podgor's claim of entitlement arose out of University Rule 8 which provides:

A student who is not satisfied by the determination of the Registrar has the right to lodge a written appeal with the Standing Committee on Residence within 30 days of receipt of written notice of the Registrar's determination, which committee shall review the appeal in a fair manner and shall afford to the student a personal hearing upon written request. A student may be represented by counsel at such hearing. The Committee shall report its determination to the student in writing. If no appeal is taken within the time provided herein, the decision of the Registrar shall be final and binding.

Therefore, to require Podgor to pay non-resident tuition fees without providing notice of the Registrar's decision or an opportunity to be heard by the Standing Committee would seem to result in the taking of property without due process of law. However, upon learning that Podgor had not received notice of the Registrar's decision on her first application, the Standing Committee revoked its decision and afforded her a hearing on the merits. This occurred *prior* to the time at which Podgor would have been required to pay the higher rate of tuition, and so due process was provided at a meaningful time.

In dealing with Podgor's second application, the Standing Committee provided a hearing in which Podgor successfully participated.

The conclusion is irresistible that Podgor was afforded procedural due process on both occasions.

B. *Ascertainable Standards*

In order to satisfy due process, an administrative decision must be in accord with previously stated, ascertainable standards. *Holmes v. New York City Housing Authority* (1968), 398 F.2d 262; *Barnes v. Merritt* (1967), 376 F.2d 8; *Harnett v. Board of Zoning* (1972), 350 F.Supp. 1159. This requirement is to make certain that administrative decisions are fair, orderly and consistent rather than irrational and arbitrary. The standards should be written with sufficient precision to give fair warning as to what the agency will consider in making its decision. *Holmes v. New York City Housing Authority, supra; Barnes v. Merritt, supra; Harnett v. Board of Zoning, supra.* And finally, the standards should be readily available to those having potential contact with the administrative body. *Harnett v. Board of Zoning, supra.*

Indiana University's standards for determining resident and nonresident student status are published in the University Rules. The factors which the Standing Committee consider in making its determination are listed in University Rules 4 and 5, which read in pertinent part:

(4). a. The residence of a student's parents or guardians.

b. The situs of the source of the student's income.

c. To whom a student pays his or her taxes, including property taxes.

d. The State in which a student's automobile is registered.

e. The State issuing the student's driver's license.

f. Where the student is registered to vote.

g. The marriage of the student to a resident of Indiana.

h. Ownership of property in Indiana and outside of Indiana.

i. The residence claimed by the student on loan applications, federal income tax returns, and other documents.

j. The place of the student's summer employment, attendance at summer school, or vacation.

k. The student's future plans including committed place of future employment or future studies.

l. Admission to a licensed profession in Indiana.

m. Membership in civic, community and other organizations in Indiana or elsewhere.

n. All present and intended future connections or contacts outside of Indiana.

o. The facts and documents pertaining to the person's past and existing status as a student.

p. Parents' tax returns and other information, particularly when emancipation is claimed.

(5). The fact that a person pays taxes and votes in the state does not in itself establish residence, but will be considered as hereinbefore set forth.

Podgor presents us with no reason or authority as to why the listed factors which enter into the decision making process are defective ...

and we know of none. The variables which the Standing Committee uses in making its decision appear to be relevant, definitive and complete.

They warn the student applicant that acts routinely performed by sojourners, specifically voting and paying taxes, are insufficient to demonstrate a change in predominant purpose. It was apparent from Podgor's initial application that her contacts with the State (Indiana) were those of a sojourner — a readily ascertainable conclusion from the standards incorporated into the Rules.

At the time of her second application, Podgor was soon to be married to an Indiana resident — an act obviously sufficient to exhibit a change of predominant purpose, and accordingly, the Standing Committee ruled that Podgor would be eligible for resident tuition rates following the twelve month residency requirement — also readily ascertainable from University Rule 4.

Thus, we conclude that University Rules 4 and 5 provided ascertainable standards which were fairly applied to Podgor. *See Holmes v. New York City Housing Authority, supra; Barnes v. Merritt, supra; Harnett v. Board of Zoning, supra.*

ISSUE FIVE — *Durational Residency Requirement*

> Does the durational residency requirement violate the Privileges and Immunities Clause of the Indiana Constitution or the Equal Protection Clause of the United States Constitution?

PARTIES' CONTENTIONS — Podgor's fifth contention is that the durational residency requirement imposed on students whose parents are not residents of Indiana violates the Privileges and Immunities Clause of the Indiana Constitution and the Equal Protection Clause of the United States Constitution by making unreasonable classifications. I.U. responds that cost-equalization provides a rational basis for the classifications created by the University Rules.

CONCLUSION — The residency waiting period (12 months) does not violate the Privileges and Immunities Clause of the Indiana Constitution or the Equal Protection Clause by penalizing the right to travel because cost-equalization provides a rational basis for the imposition of such a requirement.

## A. *Equal Protection*

In order to determine whether the durational residency requirement violates the Equal Protection Clause by penalizing the right to travel, the standard to be applied in evaluating this classification must be identified.

In dealing with a durational residency requirement similar to the one imposed by I.U., the plaintiff in *Starns v. Malkerson* (1970), 326 F.Supp. 234, *aff'd mem.*, 401 U.S. 985, charged that the waiting period constituted an infringement on the fundamental right to interstate travel and therefore the court was required to apply the compelling state interest test. The court's response was that the specific objective in enacting the durational residency requirement was cost-equalization, - a legitimate state interest. The court went on to say the waiting period did not preclude the plaintiffs from attending school nor was higher education among the basic necessities of life, so the constitutional right of interstate travel was not penalized.

> [W]e conclude that this is not a case of an infringement of a fundamental right and thus the exacting standards of the compelling state interest test have no application. Unlike *Shapiro*, we find the one-year durational residence requirement challenged here does not constitute a penalty upon the exercise of the constitutional right of interstate travel and thus the regulation's constitutionality should be tested under the traditional equal protection standards.

*Id.* at 238.

Other federal courts have reached the same result. In *Vlandis v. Kline* (1973), 412 U.S. 441, the court specifically noted that cost-equalization of higher education was a legitimate state interest and, therefore, provided a rational basis for the imposition of a durational residency requirement. *Accord, Hooban v. Boling* (1974), 503 F.2d 648; *Hayes v. Board of Regents* (1974), 495 F.2d 1326; *Kelm v. Carlson* (1973), 473 F.2d 1267; *Sturgis v. State* (1973), 368 F.Supp. 38, *aff'd*, 414 U.S. 1057; *Kirk v. Board of Regents* (1969), 273 Cal.App.2d 430, 78 Cal.Rptr. 260.

Inasmuch as non-resident students have not yet been characterized as a suspect class as in the case of classifications based on race or national origin, *Brown v. Board of Education* (1954), 347 U.S. 483; *Bolling v. Sharpe* (1954), 347 U.S. 497; or alienage, *Graham v. Richardson* (1971),

403 U.S. 365, we need not apply a strict scrutiny test to the classification in question, but need merely determine if the classification relates to a proper governmental purpose and is reasonably drawn. *See generally* J. HOWAK, R. ROTUNDA, S. J. NELSON YOUNG, CONSTITUTIONAL LAW, ch. 16(B) at 519 (1978).

### B.  *Privileges and Immunities Clause*

The standard for determining the constitutionality of the durational residency requirement under the Privileges and Immunities Clause of the Indiana Constitution[4] is also the rational basis test. Classifications are made by the Legislature. The only judicial question is whether the classification has some *reasonable relation* to the accomplishment of the end in view. *Tinder v. Clarke Auto Co.* (1958), 238 Ind. 302, 149 N.E.2d 808; *Tinder v. Music Operating, Inc.* (1957), 237 Ind. 33, 142 N.E.2d 610; *Phillips v. Officials of City of Valparaiso* (1954), 233 Ind. 414, 120 N.E.2d 398.

In order to be valid, the classification need not be exact in its application, nor is it necessary that the reason for the classification be apparent on its face. *Allen v. Pavach* (1975), 263 Ind. 574, 335 N.E.2d 219; *State v. Griffin* (1948), 226 Ind. 279, 79 N.E.2d 537.

Thus, we will apply the rational basis standard to ascertain whether the durational residency requirement complies with both the Privileges and Immunities Clause of the Indiana Constitution and the Equal Protection Clause.

University Rules 1(a) and 2(c) provide:

1.  "Residence" as the term, or any of its variations (*e.g.,* "resided"), as used in the context of these Rules, means the place where an individual has his or her permanent home, at which he or she remains when not called elsewhere for labor, studies or other special or temporary purposes, and to which he or she returns in seasons of repose. It is the place a person has voluntarily fixed as a permanent habitation for himself or herself with an intent to remain in such place for an indefinite period. A person at any one time has but one residence and a residence cannot be lost until another is gained.

---

4.  IND. CONST. art. 1 § 23.

a. A person entering the state from another state or country does not at that time acquire residence for the purpose of these Rules, but, except as provided in Rule 2(c), such person must be a resident for 12 months in order to qualify as a resident student for fee purposes.

2. A person shall be classified as a "resident student" if he or she has continuously resided in Indiana for at least twelve (12) consecutive months immediately preceding the first scheduled day of classes of the semester or other session in which the individual registers in the University; subject to the exception in (c) below.

. . . .

c. Such person may be classified as a resident student without meeting the twelve (12) month residence requirement within Indiana if his or her presence in Indiana results from the establishment by his or her parents of their residence within the state and if he or she proves that the move was predominantly for reasons other than to enable such person to become entitled to the status of "resident student."

Two classes of "non-resident" students are thus created for fee purposes. One, the student who comes to Indiana and establishes residence according to the criteria of University Rule 1 and who must be a resident for twelve months before being entitled to pay the lower tuition rate. Two, the student whose residence in Indiana is established because of the bona fide establishment of Indiana residency by his or her parents and who is entitled to pay lower tuition within the twelve month requirement.

I.U.'s stated justification for imposing this durational residency requirement is cost-equalization, i.e., the parents who establish Indiana residency are likely to make a substantial contribution to the tax base, a part of which is applied to the support of state institutions of higher learning. Such a classification is logically and naturally inherent in the subject matter, and is based on a justifiable economic distinction between the families of students who contribute to the tax base and those who do not. *See Haas v. South Bend Community School Corp.* (1972), 259 Ind. 515, 289 N.E.2d 495. *See also Dandridge v. Williams* (1970), 397 U.S. 471; *McGowan v. Maryland* (1960), 366 U.S. 420.

While perhaps not exact in its application, such a classification does not violate the Privileges and Immunities Clause of the Indiana Con-

stitution, nor does it offend the Equal Protection Clause of the United States Constitution by penalizing those who have recently exercised their constitutional right to travel.

ISSUE SIX—*Irrebuttable Presumption*

> Do the University rules as written or applied create an irrebuttable presumption?

PARTIES' CONTENTIONS—Finally, Podgor contends that to require her to first establish residency and then wait twelve months before becoming eligible for resident tuition fees creates an irrebuttable presumption of non-residence. I.U. counters that a student may establish residency immediately and thus become eligible for resident tuition fees after the durational residency requirement is met, thereby rebutting the presumption of non-residence while still a student.

> CONCLUSION—The University Rules do not create a permanent, irrebuttable presumption of non-residence.

In *Vlandis v. Kline, supra,* the Supreme Court struck down a permanent and irrebuttable presumption of non-residence because the presumption was not universally true and there existed a reasonable means of determining a change in residency status. The Court held the presumption to be violative of the due process clause of the Fifth and Fourteenth Amendments because it provided no opportunity for students to demonstrate that they had become bona fide residents. In limiting the breadth of its holding, the Supreme Court stated:

> We are aware, of course of the special problems involved in determining the bona fide residence of college students who come from out of State to attend that State's public university. Our holding today should in no wise be taken to mean that Connecticut must classify the students in its university system as residents, for purposes of tuition and fees, just because they go to school there. Nor should our decision be construed to deny a State the right to impose on a student, as one element in demonstrating bona fide residence, a reasonable durational residency requirement, which can be met while in student status. We fully recognize that a State has a legitimate interest in protecting and preserving the quality of its colleges and universities and the right of its own bona fide residents to attend such institutions on a preferential tuition basis.

*Id.* at 452-53.

The Court cited approvingly to *Starns v. Malkerson, supra,* in which the District Court upheld the twelve month residence requirement imposed by the University of Minnesota, recognizing that while there existed a presumption of non-residence, a student could rebut that presumption after having lived in Minnesota for one year, by presenting evidence of bona fide domicile.

Indiana University Rule 4[5] provides for a durational residency requirement nearly identical to that imposed by the University of Minnesota. It enables a non-resident student to rebut the presumption of non-residence by presenting "clear and convincing evidence" of residence within the State for twelve months prior to the first scheduled day of classes.

Thus, we conclude the University Rules do not impose a permanent and irrebuttable presumption of non-residence.

Affirmed.

Miller, J. concurs.

Sullivan, J. concurs in result.

NOTE—Reported at 381 N.E.2d 1274.

5.   University Rule 4 provides in pertinent part:

A person classified as a nonresident student may show that he or she is exempt from paying the nonresident fee by clear and convincing evidence that he or she has been a resident of Indiana for the twelve (12) months prior to the first scheduled day of classes of the semester in which his or her fee status is to be changed.