**Richard L. FORREST, Appellant (Plaintiff Below),**

v.

**SCHOOL CITY OF HOBART, et al, Appellee (Defendant Below).**

**No. 3–885–A–234.**

Court of Appeals of Indiana, Third District.

Sept. 29, 1986.

Anthony W. Kistler, Nancy M. Tiller, Merrillville, for appellant.

Robert J. Addison, Nick Katich, Addison, Stoner, Stiles & Katich, P.C., Merrillville, for appellee.

STATON, Presiding Judge.

Richard Forrest appeals the judgment of the Lake Superior Court upholding his expulsion from Hobart High School. He raises several issues, which we consolidate and restate as follows:

1. Whether the court erred in determining that the School's expulsion of Forrest was not arbitrary and capricious, and

2. Whether the court abused its discretion in refusing to hear additional evidence and quashing Forrest's subpoenas.

We affirm.

Forrest was a senior at Hobart High School. He was a popular student, and had been elected High School "Mayor."

Forrest also played in the School's pep band. In December, 1985, Forrest left a game at halftime to go to work. The band director, Mr. Gephart, gave Forrest the keys to the band room so he could put away his instrument.

While on his way to the band room, Forrest met several of his schoolmates. He assumed they were going to "smoke a joint." He told them he had the keys to the band room, and they agreed to go with him. While they were in the band room, the students, including Forrest, smoked marijuana. Later, Mr. Gephart smelled the odor of marijuana in the band room and, with the School's Principal, confronted Forrest. Commendably, Forrest admitted he had smoked marijuana in the band room.

A few days later, the School's Assistant Principal notified Forrest and his mother that, pending approval of the Superintendent of Schools, Forrest would be expelled for the remainder of the school year. Forrest requested and received a hearing before the Assistant Superintendent, who recommended that Forrest be expelled. The parties agree that the hearing complied with Ind.Code 20–8.1–5–8, which sets forth strict requirements of procedural due process. The Superintendent subsequently affirmed the Assistant Superintendent's recommendation.

Forrest then requested and received an appeal hearing before the Board of Education. Again, the parties agree that the hearing complied with Ind.Code 20–8.1–5–11, which governs appeals from the Superintendent's decision. The Board of Education affirmed Forrest's expulsion.

Having exhausted his administrative remedies, Forrest filed a complaint in Lake Superior Court alleging that the School's actions in expelling him were arbitrary and capricious. Forrest subpoenaed several school officials in an attempt to gain access to school disciplinary records for the prior three years. The court determined there would be no evidentiary hearing, and quashed Forrest's subpoenas on the School's motion. The court requested that the parties brief the relevant issues, and informed them it would base its ruling on the briefs and the administrative record. Ultimately, the court ruled against Forrest.

This appeal is from an action to review a disciplinary decision by the School. It is not a § 1983 challenge to the constitutionality of the statute the School relied on to discipline Forrest. Neither is it a case like *Goss v. Lopez* (1975), 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725, in which the Supreme Court invalidated suspensions given by a school without due process hearings. Finally, the present case involves no questions of fact: Forrest admits he smoked marijuana in the band room.

Forrest's appeal is based on Ind.Code 20–8.1–5–11(d), which in relevant part provides:

[T]he student may appeal [the School's decision] to the circuit or superior court.... * * * *The record shall constitute the evidence on appeal to court.* The court *may* hear such additional evidence necessary to determine the issues fully. (Emphasis added.)

Thus, the court's review is not de novo; the extent to which the court admits evidence beyond the record—if it decides to admit any at all—is left to the court's discretion.

■ A school board is an administrative body. *State ex. rel. Newton v. Bd. of School Trustees* (1984), Ind.App., 460 N.E.2d 533, 540, *trans. denied.* The burden of proving that the administrative action of the School was arbitrary and capricious falls on Forrest, the party attempting to upset the administrative order. *Metropolitan School Dist. of Martinsville v. Mason* (1983), Ind.App., 451 N.E.2d 349, 354, *trans. denied.*

### I.

#### *Arbitrary and Capricious*

■ First,[1] Forrest argues that the School's decision to expel him was arbitrary and capricious because it was based on only one factor: whether Forrest smoked marijuana in the band room.[2] The School should have considered other factors, such as Forrest's previous disciplinary record, his academic standing, "the many and numerous contributions [Forrest] had made to the Defendant School System because of his general good character," and "that there was no possibility whatsoever of a recurring problem of this nature by [Forrest]." Even if we were to adopt Forrest's characterization of his "good standing" in school,[3] we disagree that the school was *required* to consider these factors.

The School's expulsion authority is derived from Ind.Code 20–8.1–5–4, which provides in relevant part as follows:

The following types of student conduct constitute grounds for expulsion or suspension subject to the procedural provisions of this chapter:

\* \* \* \* \* \*

(7) Knowingly possessing, using, transmitting, or being under the influence of any narcotic drug [or] marijuana [while on school grounds].

The statute contains no requirement that the School consider whether the violator is brighter or more popular than his peers before it expels him.

Nor do we find an Indiana or federal case imposing such a requirement. Forrest points to *Clark Co. Bd. of Educ. v. Jones* (1981), 625 S.W.2d 586, from the Kentucky Court of Appeals. In *Jones,* the court of appeals upheld the trial court's ruling that the school board acted arbitrarily in not considering factors such as the ones advanced here by Forrest.

We do not, however, find *Jones* persuasive authority for reversal. We agree with the School's observation that *Jones* "does not 'appear to be consistent with Indiana's reluctance to second guess school boards and other administrative agencies." For example, in an analogous situation our Indiana Supreme Court addressed the propriety of a trial court substituting its judgment regarding punishment for that of an administrative board. *City of New Albany v. Whiteman* (1968), 250 Ind. 333, 234 N.E.2d 646, *reh. denied.* In *Whiteman,* the trial court had reversed a decision of New Albany's Board of Public Works and Safety, which had dismissed a police officer for violating department rules. In holding that the trial court erred in attempting to alter the punishment imposed by the administrative board, the supreme court stated:

---

1. Forrest makes several arguments which are closely related; nevertheless, we address each one independently.

2. No one has disputed that the School's policy, published in the student conduct code distributed to all students, is to expel for the remainder of the school year *all* students caught using marijuana on school grounds. Forrest himself refers to the School's policy as "unexceptional," or without exception. He also admits he had been provided a copy of the student conduct code.

3. Forrest's characterization is questionable. The record shows his academic performance was slightly above average. Also, we find no support for his assertion that "no possibility existed" for his engaging in future violations: Forrest admitted he was a "twice a week" smoker of marijuana.

[I]n its conclusions of law, [the court] made the statement that in its judgment, the punishment meted out by the Board was "too drastic". This is purely a substitution of the trial court's judgment for that of an administrative board—the substitution of the judgment of the judicial department for the judgment of the executive department acting through an administrative board. To hold that the trial court, in its own discretion, without a finding supported by evidence of an arbitrary and capricious ruling by an administrative board, may modify and change the punishment fixed by an administrative board would, in fact, turn over to the courts and the judicial department the matter of disciplining a policeman, which, under the constitution, belongs to the executive department of the government. If the judicial department, through the trial courts, may, in its discretion, fix the punishment and regulate a police department, the administrative or police board becomes merely an advisory body which would be dominated in its administrative action by the judge of the trial court.

*Whiteman*, 234 N.E.2d at 648.

We also agree with the following observation made by the School:

If plaintiff were to prevail in this action, it would mean that school boards would have to apply two different standards when considering the explulsion [sic] of students for the use of marijuana. One standard would apply to the "good student" who, under plaintiff's theory, should not be expelled because he is a "good student." Since such alleged "mitigating circumstances" are not present in the case of a "bad student", it logically follows from plaintiff's argument that such "bad student" should be expelled.

■ But even if we were to require a school board to consider Forrest's factors, the record in the present case supports the conclusion that such factors were in fact before the Board. We agree with and incorporate the following part of the trial court's opinion:

[Jones,] cited by the Plaintiff, undoubtedly has appeal, for it argues to judge each case on its merits, to judge each student apart from his peers and in the light of his offense and a variety of other relevant criteria: The previous general conduct of the student; the academic standing of the student; the probability of a recurring violation; and the consideration of alternative punishment or restrictions. The record here, however, suggests that the Defendants, during the steps of the due process procedure, considered many of these criteria, as the Plaintiff's academic and attendance record, and test profile, were a part thereof, as were the telling impressions of his teachers relating to his attitude, academic initiative—and leadership. In fact, it is in the latter connection that the hearing officer was most concerned:

"Making decisions as a leader are the most difficult part of leadership, and in this case, Rick made a seriously incorrect choice."

It is also clear, from his report, that the Hearing Officer 'investigated alternatives'. And both the superintendent and Board upheld that decision. Thus the Plaintiff was in fact assessed against a broad range of criteria strikingly similar to those suggested in the *Jones* case.

Forrest has not persuaded us that the School did not take all important factors into account in its decision to expel him, or that its failure to take his suggested factors into account is reversible error.

■ Next, Forrest argues that expulsion for the remainder of the school year is grossly excessive punishment. He offers magazine and newspaper articles questioning the wisdom of expelling students for drug use.

The United States Supreme Court has held that school officials have wide discretion in matters of discipline. In *Ingraham v. Wright* (1977), 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711, the Court stated:

Assessment of the need for, and the appropriate means of maintaining, school

discipline is committed generally to the discretion of school authorities subject to state law. '[T]he Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools.'

430 U.S. at 681–82, 97 S.Ct. at 1417–18 (quoting *Tinker v. Des Moines School District* (1969), 393 U.S. 503, 507, 89 S.Ct. 733, 736, 21 L.Ed.2d 731).[4]

More important, our legislature has expressly authorized the School's expulsion of students caught smoking marijuana at school. Ind.Code 20–8.1–5–4, supra. In light of *Ingraham* and *New Albany*, we decline Forrest's invitation to second-guess the legislature's statement of school disciplinary policy.

Forrest's next argument, reduced to its essence, is as follows: the court erred in upholding the School's decision, because Ind.Code 20–8.1–5–4 gives the court the right to review the School's disciplinary actions. Forrest argues that the statute requires "the trial courts of this state to examine school administrator's [sic] actions and the criteria upon which said actions were premised to determine if the school administrators were within the realm of the proper exercise of their discretion. · The Trial Court in the instant case failed to determine whether the [School's] actions or the basis for those actions were within the proper discretion." We agree with Forrest's statement of a trial court's role in reviewing school disciplinary decisions; we disagree with his conclusion that the court's actions in the present case were improper.

Forrest's recitation of the statute providing review adds nothing to his "argument," which contains nothing else of substance. That the court had the power to review the School's disciplinary action does not mean that it necessarily erred by upholding the School's decision, as Forrest's argument would require.

We reproduce Forrest's fourth argument from his motion to correct errors:

That the decision to uphold the [School's] decision to expel [Forrest] because it was done in furtherance of I.C. 20–8.1–5–4 is contrary to law in that I.C. 20–8.1–5–4 does not mandate expulsion for drug usage by a student, rather, depending on the circumstances, it allows either expulsion *or* suspension. (Original emphasis.)

Thus, since Ind.Code 20–8.1–5–4 does not *mandate* expulsion, the trial court erred in upholding it, Forrest argues.

This argument does not deserve extended treatment. Forrest again disagrees about the School's choice of punishment; he does not, and cannot, argue that expulsion was beyond the school's authority. He again wishes to debate the wisdom of the School's disciplinary policy, rather than its legal validity. We again decline.

■ Next, Forrest argues his expulsion was based not on the severity of his offense, but on his prominence at Hobart High School.[5] As support for his argument, Forrest points to comments made by a School official in defense of the expulsion decision:

We have to be very careful that students who are prominent ... honor roll type students ... students who are active in school functions ... aren't treated more leniently than students who are, let's

---

4. *Ingraham* held that the cruel and unusual punishment clause of the Eighth Amendment did not apply to disciplinary corporal punishment in public schools, and that the due process clause of the Fourteenth Amendment did not require a hearing prior to the imposition of corporal punishment as that practice was authorized and limited by Florida's preservation of common-law constraints and remedies.

*Tinker* held that school authorities were prohibited by the First and Fourteenth amendments

from suspending students who wore black armbands to protest the Vietnam war. The present case, of course, implicates no freedom of speech concerns.

5. We must note the inconsistency in Forrest's position: Earlier he argued the School erred by not taking his "status" into account; now he asserts it erred by doing that very thing.

say, less successful. There's a danger ..., if a person gets off with a mere slap on the hand and they are a prominent student, some of these other students who are struggling along ... that's going to be a bad example....

We believe these comments reflect the conclusion opposite the one Forrest urges. As the School observes,

> These comments clearly reflect [the School's] concern that treating Forrest any *differently* than other students would be grossly unfair. And certainly it would.

The official's comments, and the rest of the record, support only the conclusion that Forrest was treated the same as any other student who smoked marijuana on school grounds would have been treated.

■ Forrest's next argument concerns loss of Social Security benefits. He claims he was deprived of due process by the School's failure to consider that he would lose Social Security benefits he received because of his father's death.

Forrest is suing the wrong party. His argument should be directed to those who administer the Social Security program, rather than the School City of Hobart. It was the former, not the latter, that discontinued Forrest's benefits.[6]

Also, Forrest's argument goes too far. If loss of Social Security benefits were a determinative factor in school disciplinary decisions, then, as the School points out, "Forrest could do what he pleased and never be subject to expulsion." Forrest shows no error on this point.

## II.

### *Denial of Evidentiary Hearing and Subpoenas*

Forrest asserts the court erred in considering his appeal only on written briefs sub-

mitted to the court and the administrative record of hearings, rather than by an evidentiary hearing. The argument comes too late.

■ The record shows no objection by Forrest to having the appeal decided on the administrative record and the parties' briefs. The issue was first raised in Forrest's motion to correct errors. Thus, it has been waived. *Zeigler Bldg. Materials, Inc. v. Parkinson* (1980), Ind.App., 398 N.E.2d 1330, 1332; *Wolf Produce and Transp. Co. v. Lang Trucking Co., Inc.* (1965), 136 Ind.App. 571, 203 N.E.2d 308, 310.

■ Even if Forrest had not waived the issue, he fails to persuade us that the court abused its discretion in denying him an evidentiary hearing. He cites *Podgor v. Indiana University* (1978), 178 Ind.App. 245, 381 N.E.2d 1274 for the proposition that "The individual must be given the opportunity to be heard...."[7] He provides us with no discussion of that case, in which a student challenged Indiana University's procedures for determining in-state residence status. Podgor argued she had been denied the opportunity to be heard at a hearing conducted by the Standing Committee on Residence.

*Podgor* is distinguishable. Indiana University Rule 8 provided, among other things, the following right:

> A student who is not satisfied by the determination [as to residence] has the right to lodge a written appeal with the Standing Committee on Residence ... which committee ... *shall afford to the student a personal hearing upon written request.*

*Podgor*, 381 N.E.2d at 1282 (emphasis added). In contrast, Ind.Code 20–8.1–5–11(d)

---

6. If Forrest indeed lost Social Security benefits, that fact is nowhere to be found in the record. Although additional evidence was invited by the School during the hearings, no reference to Social Security was made by Forrest or anyone else.

7. We do not, of course, take issue with this general proposition. We emphasize that Forrest has conceded—and the record shows—he was accorded the procedural due process necessary for his expulsion. Thus, so far as the School is concerned, Forrest was indeed given the opportunity to be heard.

contains no such provision mandating a personal hearing upon a student's request. The statute provides that "the record *shall* constitute the evidence on appeal to court. The court *may* hear such additional evidence necessary to determine the issues fully." (Emphasis added.) The legislature has given the court discretion regarding whether to take additional evidence, including whether to allow a student to appear in person. Forrest makes no cogent argument that the court abused its discretion.

 In a related argument, Forrest argues that the court erred in quashing his subpoenas which would have required the testimony of six Hobart High School officers, and the production of school disciplinary records. Forrest hoped to obtain information to aid the argument that his expulsion was motivated by his status.

A prerequisite for testimony at a hearing is, of course, the hearing. We have already determined that the court was within its statutorily-granted discretion when it decided not to hold an evidentiary hearing which, we also noted, was never requested by Forrest.

Forrest strenuously—and cogently—argues, however, that virtually his entire case depends on his ability to show that the school treated him differently than other students who have committed the same offense. The only way he can show this, he urges, is by having access to the School's disciplinary records for the prior several years. His argument, we note, would require a school to turn over its disciplinary records in virtually all cases where a student wishes to challenge his or her punishment.

While we hold that the trial judge in the present case did not abuse its discretion in quashing Forrest's subpoenas, we are well aware of the counterargument: If a plaintiff is not allowed access to school disciplinary records, how can he *ever* show

the school has treated other students differently? [8] Therefore, we do not hold that a court *never* errs by quashing an expelled student's subpoenas: We believe that a balance must exist between a plaintiff's access to school disciplinary records and a school's protection from wholly unfounded "fishing expeditions" by disgruntled students. Therefore, before a plaintiff is entitled to school disciplinary records, he or she must submit interrogatories to the school. If the school's response, made under oath, indicates that it has given a substantially different penalty to a student who committed the same offense, then the plaintiff should be allowed access to that student's disciplinary record. If the record indicates that the difference in penalty has no principled basis, then the plaintiff will have the information necessary to argue that the school treated him arbitrarily.

We emphasize that the school still has wide discretion in its disciplinary decisions. Reversal would be appropriate only where the school can show no principled basis for the difference in penalty.

Forrest's position in the present case is seriously undermined by his admission—and this fact is not disputed by anyone—that the school's policy of expelling for the remainder of the school year *all* students caught smoking marijuana on school grounds is "unexceptional." The court did not abuse its discretion in quashing Forrest's subpoenas.

The judgment of the trial court is affirmed.

HOFFMAN and GARRARD, JJ., concur.

---

8. We acknowledge situations in which a student might show he has been treated arbitrarily. As an example, no one would argue that a school could use students' hair color as a basis for determining severity of punishment. Or, more realistically, a student should be allowed to show that the student with whom he was caught smoking marijuana, but who escaped punishment, was the son of the school board's president.