**COMMUNITY CARE CENTERS, INC.,**
**Appellant (Plaintiff),**

v.

**INDIANA DEPARTMENT OF PUBLIC WELFARE, Appellee (Defendant).**

No. 29A02–8609–CV–00321.

Court of Appeals of Indiana,
Second District.

May 24, 1988.

William P. Tedards, Jr., Jaeckle, Fleischmann & Mugel, Washington, D.C., David E. Jose, Locke, Reynolds, Boyd & Weisell, Indianapolis, David L. Henry, Community Care Centers, Inc., Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Gordon E. White, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Appellant-plaintiff Community Care Centers, Inc. (Community Care) appeals from the trial court's judgment affirming the denial by appellee-defendant Indiana Department of Public Welfare (the Department) of Community Care's request for an adjustment of the Medicaid rate base at its Hamilton Heights facility. Community Care asserts that the Department's decision is not supported by substantial evidence, is arbitrary and capricious, is contrary to the Department's own regulations, and is in contradiction of the federal Medicaid reimbursement scheme.

We reverse and remand.

## FACTS

Community Care is an Indiana corporation which operates and manages nursing homes throughout Indiana. In December of 1971, Community Care entered an agreement to lease, for a ten year period, the Hamilton Heights Health Center (Hamilton Heights), a nursing home in Arcadia, Indiana. The agreement contained an option for Community Care to purchase at the end of the lease term the facility, furnishings, equipment, and the real estate at a fixed price. At the end of the lease, Community Care exercised its option to purchase Hamilton Heights by land contract, to be consummated on March 1, 1982.

On February 8, 1982, Community Care submitted a request to the Department for a rate adjustment, i.e., a stepped-up rate base, to cover the additional costs incurred by the prospective purchase of Hamilton Heights. The Department is the designated state agency responsible for overseeing the Medicaid reimbursement program in Indiana. Community Care submitted its request to Myers & Stauffer, the Department's fiscal agent which determined nursing home rates at that time.

On October 7, 1982, the Department's Medicaid Division, after discussion with Myers & Stauffer, denied Community Care's request for a new rate base because:

"The review revealed that the transaction does not meet the test to qualify as a valid change of ownership. This determination is based on the fact that the same entity will conduct the business before and after the transaction. In addition, the real estate is being purchased by a land contract, whereby the legal ownership of the land remains with the vendor. Due to the above, [the] request for a rate change cannot be favorably considered."

*Record* at 623.

Community Care appealed this decision and an administrative hearing was held. At the hearing, it was established that the Department had granted rate increases for six other facilities which, like Hamilton Heights, had been leased for a period and then later bought on contract. Five of the facilities had been granted the rate increase prior to the purchase of Hamilton Heights, and one rate increase was allowed after Hamilton Heights was disallowed its rate increase.

The hearing officer ruled in favor of the Department, finding that Community Care had remained the same provider throughout and that the Department's prior and subsequent decisions in other cases had not been relied on by Community Care when it made its decision to purchase Hamilton Heights. The hearing officer concluded that the actual ownership of the nursing home was irrelevant, and that the Department could only grant a stepped-up rate base when there had been a change of provider. The State Board of Public Welfare sustained the hearing officer's decision on May 28, 1985.

Community Care filed a petition for judicial review in the trial court on June 17, 1985. The trial court considered briefs and an oral argument, and affirmed the Department's decision. Community Care appealed that decision, and we previously remanded the case to the trial court for it to enter findings of fact to support its judgment.

*Community Care Center, Inc. v. Indiana Dep't of Pub. Welfare* (1987), Ind.App. 513 N.E.2d 1265. The matter is now before us again, with the trial court's findings of fact and conclusions, which basically echo those of the hearing officer.

### ISSUE

Because we reverse on the following issue, we do not address the other contentions raised by Community Care:

Did the Department act arbitrarily and capriciously in denying Community Care an adjusted rate base?

### DECISION

PARTIES' CONTENTIONS—Community Care charges that the Department acted arbitrarily and capriciously in denying its rate request because the Department's determination was inconsistent with several other decisions made by the Department and because no valid explanation for the inconsistency was provided.

The Department counters that it is free to change its past erroneous practices and that it provided sufficient reasons for doing so in this case. It further argues that Community Care did not rely on the other decisions made by the Department.

CONCLUSION—The Department failed to provide ascertainable standards at the time it denied Community Care's request for an adjusted Medicaid rate base, and therefore acted arbitrarily and capriciously.

█ To insure that an agency's decisions are orderly and consistent, the agency must be guided by ascertainable standards which are well stated and followed. *See Mugg v. Stanton* (1983), Ind.App., 454 N.E. 2d 867; *Natural Resources Comm'n of the Dep't of Natural Resources v. Sullivan* (1981), Ind.App., 428 N.E.2d 92; *Commission on Gen. Educ. v. Union Township School* (1980), Ind.App., 410 N.E.2d 1358; *Podgor v. Indiana Univ.* (1978), 178 Ind.App. 245, 381 N.E.2d 1274, *trans. denied.* As explained in *Podgor*:

"In order to satisfy due process, an *administrative decision must be in accord with previously stated, ascertainable standards.* This requirement is to make certain that administrative decisions are fair, orderly and consistent rather than irrational and arbitrary. The standards should be written with sufficient precision to give fair warning as to what the agency will consider in making its decision. And finally, the standards should be readily available to those having potential contact with the administrative body."

*Id.* at 258, 381 N.E.2d at 1283 (citations omitted) (emphasis supplied). These are not empty words. Those whose activities will be governed by the decisions of agencies need standards by which to gauge their decisions, as do the courts which review the agencies' decisions.

In *Podgor, supra,* there were written standards which were determined to be sufficiently specific. The basis of the denial here (no change of ownership and no change of provider) apparently stemmed from an unclear, unexpressed method of review newly instituted by the Department. There was no written regulation, manual, or statement by the Department which informed Community Care of these criteria. The standard considered in producing the ultimate decision to deny the request in this case was unarticulated and too vague to provide sufficient guidance to Community Care before it purchased Hamilton Heights. In fact, Myron Bradburn, the president of Community Care, related at the hearing that the Department's policy on rate requests was ascertained by him from informational exchanges among those present at financial management committee meetings. *Record* at 412. In short, the Department had no clear policy or standards by which a purchaser of a health care facility in 1982 could objectively judge whether he would be entitled to a rate base increase. *Cf. Commission on Gen. Educ., supra* (commission could not go beyond four statutory criteria and define the term "better accomodation" on a case-by-case basis when considering whether student should be transferred, as no ascertainable standard would exist by which court could review the decision).

Even had the Department's policy been well established and provided to those who inquired of the Department, the Department's decisions as to when a change of provider occurred for purposes of a rate increase lacked consistent application.

As the Department readily admitted at the hearing, other providers were granted new stepped-up rate bases in prior and subsequent situations analagous to the present one. For instance, in 1979 Robert Rynard (Rynard) purchased on contract five nursing home facilities which he had previously been leasing. Rynard was granted a rate adjustment following this acquisition. *Record* at 384. In October of 1982, Community Care purchased by land contract another one of its facilities, Columbia City. In virtually all respects, the transaction in the purchase of Columbia City mirrored those of the Hamilton Heights transaction. In December of 1982 the Department granted Community Care's request for a rate calculation on the Columbia City facility. The hearing officer in the present case found that the inconsistent results reached by the Department were caused by the method which the Department had previously used (before the Hamilton Heights decision) in reviewing rate requests.

■ It is well-established under federal law that agencies are free to change past rulings and policies. *See Hatch v. Federal Energy Regulatory Comm'n* (D.C.Cir. 1981), 654 F.2d 825; *Columbia Broadcasting Sys. v. Federal Communications Comm'n* (D.C.Cir.1971), 454 F.2d 1018. Clearly, an agency should not be bound by prior policy when that policy proves to be flawed or in need of change. However, a change in policy must be explained and the reasons therefor articulated. *See Cheshire Hosp. v. New Hampshire–Vermont Hospitalization Serv., Inc.* (1st Cir.1982), 689 F.2d 1112; *Hatch, supra; Columbia Broadcasting, supra.* As clarified in *Columbia Broadcasting:*

"We do not challenge the Commission's well established right to modify or even overrule an established precedent or approach,.... Lodged deep within the bu-reaucratic heart of administrative procedure, however, is the equally essential proposition that, when an agency decides to reverse its course, it must provide an opinion or analysis indicating that the standard is being changed and not ignored, and assuring that it is faithful and not indifferent to the rule of law."

*Id.* at 1026.

The Department's reliance on the change of its internal review to justify the inconsistencies ignores the fact that a decision subsequent to the Hamilton Heights decision proved to be inconsistent as well. The fact that different conclusions were reached based on the same underlying facts points to an arbitrary result. *See Chesire Hosp., supra; Columbia Broadcasting, supra.*

This case is not unlike *Horton Memorial Hosp. v. New York State Dep't of Health* (1982), 112 Misc.2d 154, 446 N.Y.S.2d 889, in which the court found in part that the Department's denial of a request for a revision of the Medicaid reimbursement rate of one provider to be arbitrary and capricious when the Department approved the rate revision for another provider based on the same increase in operating costs. The court said the Department offered no valid explanation as to the differing policies except to say that it was administrative error. *Id.*

■ The hearing officer found that Community Care did not rely on the prior Rynard decisions and could not have relied on the subsequent Columbia City decision when it made its decision to purchase Hamilton Heights. We are bound to accept the hearing officer's finding. *Aaron v. Review Bd. of Indiana Employment Sec. Div.* (1981), Ind.App., 416 N.E.2d 125, *trans. denied.* However, because the Department had no written standards setting forth the specific standards used in reviewing rate requests, was vacillating on its policy with regard to rate requests at the time of the Hamilton Heights transaction, and proceeded to determine rate requests using its uncontrolled discretion, the agency's decision was arbitrary and capricious. *See Horton Memorial Hosp., supra.*

We recognize that regulations were ultimately promulgated in 1983 which explicitly set forth who would be entitled to reimbursement and the criteria needed in order to qualify for a new rate base. *See* 470 I.A.C. 5–4.1–12 and –6(e) (1988). This regulation comes too late in the day to provide the guidance needed by Community Care at the time it purchased Hamilton Heights in 1982.

We thus reach the conclusion that the Department's decision was arbitrary and capricious and must be set aside.

Reversed and remanded to the Department with directions to alter its decision consistent with this opinion.

SHIELDS, P.J., and HOFFMAN, J., concur.