WELBORN MEMORIAL BAPTIST HOSPITAL, INCORPORATED, Consolidated Appellant (Plaintiff Below),

v.

COUNTY DEPARTMENT OF PUBLIC WELFARE OF VANDERBURGH COUNTY, Consolidated Appellee (Defendant Below).

No. 1–482A85.

Court of Appeals of Indiana, First District.

Nov. 15, 1982.

Rehearing Denied Dec. 15, 1982.

Donald J. Fuchs, Merrill, Johnson & Kimpel, Evansville, for consolidated appellant.

Dennis Brinkmeyer, County Atty., Evansville, for consolidated appellee.

ROBERTSON, Judge.

This is an appeal brought by Welborn Memorial Baptist Hospital (Hospital) seeking reimbursement for medical expenses incurred by six indigent patients. The Vanderburgh Circuit Court ruled that the County Department of Public Welfare (DPW) has the authority under the Hospital Commitment Act to limit reimbursement to the initial five to seven days of hospitalization.

We reverse.

Six indigent persons were admitted to Welborn Memorial Baptist Hospital on an emergency basis for treatment of either alcoholism, drug addiction, or an emotional disorder. In each case, the DPW paid for only the initial five to seven days of treatment. The DPW has a policy limiting reimbursement for indigent patients suffering from a mental disorder, alcoholism, or drug addiction to only the initial five to seven days of hospitalization. The DPW maintains that its policy is necessary in order to make the costs of hospital care economically feasible. It also maintains that the Hospital Commitment Act, Ind.Code 12–5–1–1[1] et seq. (Act) implicitly grants it the authority to establish rules and regulations such as the one in question.

The Hospital argues that the DPW's policy is arbitrary and capricious and in violation of the Hospital Commitment Act. It asserts that the statutes plainly require the local DPW to pay the total cost of medical care for an indigent suffering from a defect, disease, or deformity. In support of its argument, the Hospital relies on sections two and seven of the Act. Section two gives the local DPW authority to commit an individual to a hospital for treatment. It also provides that:

The determination of all professional matters with respect to the treatment and date of final discharge of said patient from said hospital, shall be made solely by the physician, or physicians, responsible for the treatment of such person.

Section seven provides that:

The necessary costs and expenses which may be incurred upon the commitment of any person to in-patient or out-patient hospital care or dental clinic treatment by the county department of public welfare shall be paid out of the county welfare fund, except as [is] herein otherwise provided.

The language of the Hospital Commitment Act is clear. It sets forth a mandatory obligation on the part of the local DPW to provide full medical treatment for indigents suffering from any disease, defect, or deformity.[2] Although, the

---

1. Ind.Code 12–5–1–1—12–5–1–17 was repealed by Acts 1981, P.L. 144, 82. For present law, see IC 12–5–6–1—12–5–6–11. In this case, the terms of hospitalization of all six individuals were in 1980, prior to the January 1, 1981 effective date of the new statutes. Reference throughout this opinion to the Act refers to the prior Hospital Commitment Act then in effect.

2. The language of the new Hospital Commitment Act is equally explicit in this regard. IC 12–5–6–11 clearly states that the county is responsible for emergency medical care given in any hospital to a person who qualifies for assistance.

DPW's policy may be well intentioned, the legislature simply has not granted the county the discretion or authority to limit reimbursement of hospital expenses incurred by indigents. The only authority bestowed upon the local DPW is in regard to the eligibility for benefits. *See* IC 12–5–1–1 and 12–5–1–15.[3] Once that determination has been made, the county is obligated to pay for full medical treatment.

Understandably, it would be an excessive burden on the county to provide medical care for indigents that require prolonged periods of hospitalization. The legislature has provided for such cases. According to the Act, IC 12–5–1–3, if a person requires treatment for a period of time longer than six months, a new commitment shall be furnished, provided such individual remains eligible.[4]

Judgment reversed.

RATLIFF, P.J., concurs.

NEAL, J., dissents with opinion.

NEAL, Judge, dissenting.

I respectfully dissent.

Ind.Code 12–5–1–1 (1976)[1] provided in part that

"The county department of public welfare ... is *hereby empowered* to commit to any public hospital ... any person ... who *shall appear to the satisfaction of the department* after examination and upon recommendation of a physician or surgeon ... to be suffering from a disease, defect or deformity, which may be benefited by treatment in such hospital. ..." (Emphasis added.)

The section further provided for investigation and determination by the department of the financial eligibility of such persons. A public hospital was defined as "county

and city hospitals or hospitals which are not conducted for profit." Ind.Code 12–5–1–11 (1976). Ind.Code 12–5–1–15 (1976) stated that:

"Whenever any person is admitted to any hospital operated by the trustees of Indiana University or to any other public hospital on an emergency basis with the expectation that the county department of public welfare shall be responsible for necessary charges and expenses, the hospital authorities shall notify promptly such county department of public welfare who shall investigate immediately and determine the eligibility or ineligibility of such person for hospitalization at the expense of the county department of public welfare and shall promptly notify the proper hospital authority of such determination. When any person is committed on an emergency basis subject to the later determination of eligibility, the necessary investigation, determination of eligibility or ineligibility, and notification of hospital authorities of such determination, shall be made promptly. If ineligible, the hospital authorities shall make collection directly from the patient or persons responsible for him or from other resources available to him or from other responsible public authorities. If the county department of public welfare has participated in the original emergency commitment subject to a later determination of eligibility, upon a determination of ineligibility, the liability of the county department of public welfare shall cease in any event, whenever such emergency is over and the patient can be moved from such hospital without injury as determined by medical authority."

Ind.Code 12–5–1–2 (1976) provided in part that:

mits such transfer. The county is not responsible for payment of medical costs accrued at a hospital owned or operated by a health and hospital corporation.

---

**3.** For present law *see* IC 12–5–6–2.

**4.** The new Hospital Commitment Act also provides for such cases. IC 12–5–6–11 provides that the county is responsible for emergency medical care rendered to an indigent, however, the hospital shall transfer the patient to a hospital operated by the health and hospital corporation as soon as the attending physician determines that the patient's medical condition per-

**1.** Ind.Code 12–5–1–1—12–5–1–7 was repealed by Acts 1981, P.L. 144, 82. For present law see Ind.Code 12–5–6–1—12–5–6–11.

"If the department shall determine that a person is a proper subject for treatment in a hospital ... and commits such person thereto, the department shall transmit an application and commitment to the hospital ... The determination of all professional matters with respect to the treatment of such person, the length of treatment and date of final discharge of said patient from said hospital, shall be made solely by the physician, or physicians, responsible for the treatment of such person."

The majority takes the position that this latter provision is wholly controlling, and ignores the other sections quoted above which give discretion to the Welfare Departments in the placement of indigents in hospitals.

Vanderburgh County has two facilities operated by the Department of Mental Health of the State of Indiana, including the Evansville State Hospital and the Southwestern Mental Health Clinic, specializing in the care of mental patients and drug and alcohol abusers. These facilities exist pursuant to Ind.Code 16–13–1–3 *et seq.*, and Ind.Code 16–13–7–1 *et seq.*

In this instance we are dealing with mental patients, and alcohol and drug abusers. The policy of the Welfare Department, in effect, limits their stay in the most expensive general hospital to five to seven days, sufficient time to provide necessary emergency care for such patients. There is no showing of any need for general hospital care for a longer period of time. It does not appear that the Welfare Department received any prior or contemporaneous notice, required by Ind.Code 12–5–1–15 (1976), that physicians had placed these patients in the general hospital.

I view the policy of the Welfare Department as a reasonable one; after emergency care has been given and the patient's condition is no longer life-threatening, he would be placed in a much less expensive, State-supported mental health facility which has an extensive treatment program for drug and alcohol abuse.

Under the sections cited above, the Welfare Department is granted a certain amount of discretion to determine when and where indigent patients are placed, and is permitted to require them to be placed in a suitable facility that is State-maintained and less expensive. The majority opinion gives health care providers a blank check on the public treasury with no restraint whatever. Under such a rule health care providers may unnecessarily keep a patient in a more expensive general hospital for their own convenience or economic benefit. I do not believe the legislature contemplated such a result. When the State has created adequate facilities for the care of indigents, it may require that these facilities be used whenever feasible. I would affirm the judgment of the trial court.