**COUNTY DEPARTMENT OF PUBLIC WELFARE OF VANDERBURGH COUNTY, Indiana Department of Public Welfare, and Dorothy Walker, Appellants–Defendants,**

v.

**DEACONESS HOSPITAL, INC., Appellee–Plaintiff.**

No. 82A05–9103–CV–83.

Court of Appeals of Indiana,
Fifth District.

March 30, 1992.

Mary Jane Humphrey, Evansville, for appellants-defendants.

Wm. Michael Schiff, Mary Lee Franke, Kahn, Dees, Donovan & Kahn, Evansville, for appellee-plaintiff.

BARTEAU, Judge.

Appellee-plaintiff Deaconess Hospital provided in-patient treatment to Dorothy Walker, then requested payment for its services from appellants-defendants the Department of Public Welfare of Vanderburgh County ("County DPW") and the Indiana Department of Public Welfare ("State DPW") under the Hospital Care for the Indigent Act, Ind.Code 12–5–6–1, *et seq.* ("HCI Act"). Payment was denied. After exhausting administrative remedies to no avail, Deaconess sought judicial review. The trial court set aside the administrative denial of payment and remanded for further proceedings. From that order, the agencies appeal. We affirm.

The HCI Act provides in pertinent part:

A resident of Indiana who meets the income and resource standards established by the [State DPW] ... is eligible for assistance to pay for any part of the cost of care provided in a hospital in Indiana that was necessitated after the onset of a medical condition that manifested itself by symptoms of sufficient severity that the absence of immediate medical attention would probably result in:

(1) placing the person's life in jeopardy;

(2) serious impairment to bodily functions; or

(3) serious dysfunction of any bodily organ or part.

In addition, a qualified resident is eligible for assistance to pay for any part of the cost of care that is a direct consequence of the medical condition that necessitated the emergency care.

I.C. 12–5–6–2.1(a) ("§ 2.1"). The HCI Act further provides that application for payment is made by the hospital, to the county DPW of the county in which the hospital is located. I.C. 12–5–6–4(a). A patient may

similarly file, but reimbursement will only be made to the care-providers. I.C. 12–5–6–4(f). Once an HCI Act application has been filed, the county DPW determines eligibility. I.C. 12–5–6–5(a). Upon a determination of non-eligibility, any affected person may appeal to the State DPW, which must provide a hearing and determine eligibility anew. I.C. 12–5–6–8(a). Section 8(a) also states that determinations of the State DPW are subject to judicial review as provided in I.C. 4–21.5–1–1 et seq. (the Indiana Administrative Adjudication Act).

The County DPW determined Walker met the residency and indigency requirements for eligibility, but that the condition for which Deaconess treated Walker did not meet the standards of § 2.1. After that initial denial, a hearing was held before an administrative law judge ("ALJ") of the State DPW. The ALJ denied payment, and Deaconess requested review by the Board of the State DPW. The Board adopted the ALJ's decision, which stated, in pertinent part:

17. That on December 17, 1986, [Walker's] mother brought [her] to Deaconess Hospital because [Walker] was feeling suicidal.

18. That [Walker] voluntarily admitted herself into the psychiatric unit of Deaconess Hospital on December 17, 1986.

19. That although [attending physician] Dr. Rietman's opinion was that [Walker] met the requirements of [§ 2.1], the medical evidence submitted is somewhat conflicting and does not support this opinion.

20. That although at the time of [Walker's] admission to the hospital she appeared sad, dejected and depressed and was determined by the emergency room physician to be potentially suicidal, she also seemed alert, was in good contact with her environment, was oriented in all spheres, no clear cut evidence of delu-

sions or hallucinations was apparent, her memory was intact and she had not formulated any definite plans on how to harm herself.

21. That although during her stay at Deaconess Hospital [Walker] at times verbalized some suicidal thoughts, these thoughts quickly passed and she made no attempt to harm herself throughout her stay and in fact, when playing her guitar or when participating in group activities, seemed relatively calm, happy and at ease.

22. That the medical evidence presented does establish that [Walker] was being affected by depression which required treatment but this evidence does not establish that this medical condition met the requirements for HCI eligibility under I.C. 12–5–6–2.1.

23. That in accordance with the preceding findings of fact, the Administrative Law Judge finds that this denial of HCI benefits is correct.

Record at 131–32.[1]

We note as a preliminary matter our supreme court's holding that mental health emergencies are not excluded from HCI benefits. *Lutheran Hosp. of Fort Wayne, Inc. v. State Dep't of Pub. Welfare* (1991), Ind., 571 N.E.2d 542, 545. In the case of Walker, the trial court, in setting aside the administrative denial of benefits, entered comprehensive findings of fact and conclusions of law. The trial court's exemplary work is reproduced here in lieu of restatement by this court. Of critical importance are finding of fact # 7 and conclusions of law # 2, 3, and 4:

1. Dorothy Walker ("Walker") was admitted to Deaconess Hospital, Inc. ("Deaconess Hospital") in Evansville, Indiana, on December 17, 1986, for treatment of an affective disorder and she was discharged on February 12, 1987.

---

1. Under § 19 of the HCI Act, I.C. 12–5–6–19, reimbursement for qualified treatment before January 1, 1987 comes from a County DPW. The State DPW reimburses HCI costs incurred after that date. Because Walker's stay at Deaconess lasted from mid-December, 1986 until February, 1987, the County DPW and the State

DPW would have paid HCI benefits on a *pro rata* basis if Walker's claim had been approved. In the proceedings below, the bifurcated claim was consolidated subject to that understanding, and nothing in this opinion should be construed to indicate anything otherwise.

2. Walker was a resident of Vanderburgh County, Indiana residing at 111 E. Maryland Street at the time of her admission.

3. Walker is a citizen of the United States or a lawfully admitted alien as required by I.C. 12–5–6–2.1(d).

4. An application for HCI benefits for Walker was timely filed with the Vanderburgh County Department of Public Welfare ("County DPW") on December 22, 1986.

5. The County DPW denied this application on May 18, 1987, for the stated reason: "Failure to meet emergency hospitalization requirement." This decision was made by a supervisor with the County DPW who has no medical training and who did not consult beforehand with a medical professional. The County DPW notified Walker and Deaconess Hospital in writing of its decision as required by I.C. 12–5–6–5(c) on May 18, 1987. This matter was timely appealed to the State Department of Public Welfare ("State DPW") on July 22, 1987, by Walker's attending physician, Dr. Jerome Rietman ("Dr. Rietman").

6. A second notice was mailed to the patient and Deaconess Hospital on February 24, 1988, by the State DPW. This notice stated the application had been denied for the reason: "The hospital admission does not meet the emergency criteria specified by state law, I.C. 12–5–6–2.1, as amended by P.L. 16, 1986."

7. A notice of hearing was sent to all interested persons known to the State DPW and on November 9, 1988, a hearing was scheduled and heard before an Administrative Law Judge ("ALJ") under the provisions of I.C. 12–5–6–8. The only witnesses who testified at said hearing were Dr. Rietman and a caseworker from the County DPW. In his testimony, Dr. Rietman, a Board certified psychiatrist who has practiced medicine since 1958, reviewed Walker's condition at the time of and during her hospitalization noting that she exhibited signs of depression, sadness, dejection, pessimistic thoughts of despair, hopelessness, helplessness, continuous mood swings and that she had made a previous attempt at suicide. Dr. Rietman further testified that in his professional opinion at the time of Walker's admission to Deaconess Hospital and during her stay there she suffered from a medical condition with symptoms of sufficient severity that the absence of immediate medical attention would have placed her life in jeopardy. Over objections by counsel the ALJ allowed the caseworker for the County DPW to introduce into the record a copy of a letter dated November 3, 1988, from Dr. David Ellis, Medical Director–Medicaid to the Director of the County DPW, Wm. Lark Buckman. As support for the State DPW's denial of HCI benefits, Dr. Ellis' letter noted that Walker's medical condition of depression was accompanied by "suicidal thoughts or ideation, but no gesture." Dr. Ellis's letter concluded by noting that "actually the decision (to deny benefits) is based upon restrictive emergency criteria because of limitations in HCI funding."

8. On January 5, 1989, the ALJ issued his Findings of Fact and a Decision sustaining the denial of HCI benefits by the County DPW and the State DPW for hospital care furnished by Deaconess Hospital to Walker. In his decision, the ALJ rejected Dr. Rietman's professional opinion stating that the "medical evidence submitted is somewhat conflicting" and that Walker's medical condition did not meet "the requirements for HCI eligibility under I.C. 12–5–6–2.1."

9. On January 12, 1989, Deaconess Hospital timely requested review by the Indiana Board of Public Welfare on the decision of said ALJ in this matter. At its meeting held February 20, 1989, the Indiana Board of Public Welfare sustained the decision of the ALJ and notified all interested parties of such fact by Order dated March 2, 1989. Deaconess Hospital timely filed its Petition for Judicial Review with this Court on March 20, 1989, and has complied with all other statutory prerequisites to invoking judicial review by this Court.

10. Any Finding of Fact herein deemed to be a Conclusion of Law shall be a Conclusion of Law.

## CONCLUSIONS OF LAW

1. The law is with the Petitioner and against Respondents, State DPW and the County DPW.

2. I.C. 12–5–6–2.1 reads in pertinent part as follows:

"(a) A resident of Indiana ... is eligible for assistance to pay for any part of the cost of care provided in a hospital in Indiana that was necessitated after the onset of a medical condition that manifested itself by symptoms of sufficient severity that the absence of immediate medical attention would probably result in:

(1) placing the person's life in jeopardy;

(2) serious impairment to bodily functions; or

(3) serious dysfunction of any bodily organ or part...."

Nowhere in this statutory language does it specify that before a hospitalization for depression may qualify for HCI coverage a "suicidal gesture" must be present. Nor is this Court aware of any *promulgated* regulation that would support the State DPW's assertion that "qualifying emergency medical criteria" requires [sic] "documentation of a suicidal gesture rather than ideation alone." As a matter of law, this agency determination is potentially inconsistent with the medical eligibility standard set forth at I.C. 12–5–6–2.1 and thus the agency's decision is arbitrary and capricious. *Community Care Centers, Inc. v. Indiana Department of Public Welfare*, 1988, Ind.App., 523 N.E.2d 448. Moreover, given the statement in Ellis' letter that the decision to deny HCI benefits was "actually ... based upon restrictive emergency criteria because of limitations in HCI funding," it would appear that an arbitrary standard relating to HCI funding limitations has been applied in this case. For this additional reason, the Agency's decision is arbitrary and capricious and must be set aside. See, e.g., *Welborn Memorial Baptist Hosp. v. County DPW of Vanderburgh County*, 1982, Ind.App., 442 N.E.2d 372.

3. The sworn testimony of Walker's attending physician, Dr. Jerome Rietman, established that she was suffering from a medical condition with symptoms of sufficient severity that the absence of immediate medical attention would have placed her life in jeopardy. There was no competent or probative medical evidence in the record to the contrary presented by the County or State DPWs. Nevertheless, the Agency's ALJ concluded that the patient's medical condition did not meet the requirements for HCI eligibility under I.C. 12–5–6–2.1. There being no evidence in the record to substantiate this legal conclusion as to a medical issue it necessarily follows that the legal conclusion is wholly arbitrary and capricious and cannot be upheld on judicial review.

4. Alternatively, assuming that the ALJ treated the written letter of Dr. Ellis as probative evidence, the Agency erroneously relied solely on hearsay evidence in violation of I.C. 4–21.5–3–26 to reach its conclusion that Walker's medical condition did not meet the requirements for HCI eligibility. The Findings and Decision of the Indiana Board of Public Welfare are otherwise not in accordance with the law, in excess of statutory authority and rendered without observance of due procedure required by law.

Any Conclusion of Law herein deemed to be a Finding of Fact shall be a Finding of Fact.

## ORDER

The Court being duly advised in the premises and having entered its written Findings of Fact and Conclusions of Law based thereon does now grant Petitioner's Motion to Set Aside Decision of Indiana Board of Public Welfare and,

IT IS THEREFORE ORDERED ADJUDGED AND DECREED that the Decision of the Indiana Board of Public Wel-

fare be and hereby is set aside, that this case be and hereby is remanded for further proceedings, and upon remand that the Indiana Board of Public Welfare enter its decision consistent with this Opinion and Order.

Record at 182–86.

## STANDARD OF REVIEW

■ "Judicial review of an administrative decision is limited to whether the agency possessed jurisdiction over the subject matter, and whether the agency's decision was made pursuant to proper procedures, was based upon substantial evidence, was not arbitrary or capricious, and was not in violation of any constitutional, statutory or legal principle." *State Bd. of Tax Comm'rs v. Jewell Grain Co.* (1990), Ind., 556 N.E.2d 920, 921; *see also* Ind.Code 4–21.5–5–14. In reviewing agency decisions, a court may not conduct a trial *de novo*. I.C. 4–21.5–5–11. Thus, courts defer to an agency's factfinding, provided the findings are supported by substantial evidence. *Hamilton County Dep't of Pub. Welfare v. Smith* (1991), Ind.App., 567 N.E.2d 165, 167–68.

■ However, a court owes no deference to an agency's conclusions of law, because "[l]aw is the province of the judiciary." *Board of Trustees of Pub. Employees' Retirement Fund of Ind. v. Miller* (1988), Ind., 519 N.E.2d 732, 733. When the facts are undisputed, and the question is whether they lead to a certain conclusion, the case presents a question of law, and the courts need not defer to agency decision making. *See id.*

An agency that reaches a conclusion in the absence of "ascertainable standards which are well stated and followed" may have acted arbitrarily and capriciously. *Community Care Centers, Inc. v. Indiana Dep't of Pub. Welfare* (1988), Ind.App., 523 N.E.2d 448, 450. Two reasons counsel against permitting agency actions based on unwritten rules: first, parties are entitled to fair notice of the criteria by which their petitions will be judged by an agency, and second, judicial review is hindered when agencies operate in the absence of estab-lished guidelines. *Id.* An agency action may also be considered arbitrary and capricious "if made in disregard of the facts and circumstances ·of the case without some basis which would lead a reasonable person to the same conclusion." *Kennedy v. Saint Joseph Memorial Hosp. of Kokomo, Ind., Inc.* (1985), Ind.App., 482 N.E.2d 268, 271, *limited by Pepple v. Parkview Memorial Hosp., Inc.* (1989), Ind., 536 N.E.2d 274, 276 (review under arbitrary and capricious standard available for personnel actions of public but not private hospitals).

## DISCUSSION

In conclusion of law # 2 the trial court opined that DPW acted arbitrarily and capriciously, citing *Community Care, supra.* This conclusion concerns the· Ellis letter described in finding of fact # 7. The letter stated its intention to present medical testimony on behalf of the State DPW, as follows:

> Qualifying emergency medical criteria, as applied to a diagnosis of depression with suicidal considerations, seeks documentation of a suicidal gesture rather than ideation alone. [Dr. Reitman's notes on Walker] record substantial indication of depression with suicidal thoughts or ideation, but no gesture. In addition, paranoid and psychotic symptoms were not noted. Thus, the medical review opinion [denied HCI benefits because "hospital admission does not meet the emergency criteria specified by state law."]
>
> I would like to add that this decision is in no way meant to indicate that the hospitalization and treatment were inappropriate. Actually, the decision is based upon restrictive emergency criteria because of limitations in HCI funding.

Record at 111–12. The trial court correctly pointed out that § 2.1 does not require a suicidal "gesture" before authorizing HCI reimbursement. Nor is such a requirement set out in regulations promulgated pursuant to § 2.1. *See* 470 IAC 11.1–2, –3 (1988); 470 IAC 11.1–4 (1991 Supp.). Thus, the State DPW based its medical review opinion on an unpromulgated standard. Under

the reasoning of *Community Care, supra,* that is arbitrary and capricious decision making.

The Ellis letter added that the Deaconess claim had "actually" been denied on the basis of "restrictive emergency criteria" made necessary by limited funding for HCI. We note that HCI is funded by county-based taxation, I.C. 12–5–6–16, and that it limits reimbursements in years when funding falls short of the amount of approved claims. I.C. 12–5–6–6(b); *see also* 470 IAC 11.1–3–1(d), –2(c) (1988); 470 IAC 11.1–4–2(c), –3(c) (1991 Supp.). In other words, due to underfunding of HCI, a hospital may be left unreimbursed even where there is no doubt that a patient's condition met the criteria of § 2.1. However, that is not to say that the State DPW, when financially strapped, can modify the criteria of § 2.1 in order to filter out some claims to preserve reimbursement in others. According to the Ellis letter, such restriction of the criteria of § 2.1 was "actually" why the State DPW denied this claim. Again, this denial was arbitrary and capricious because it followed from an unwritten policy. *Community Care, supra; see also Mugg v. Stanton* (1983), Ind.App., 454 N.E.2d 867, 870, *reh'g denied* (agency policy "must be duly promulgated before it can be valid and enforceable").[2]

Turning to the trial court's conclusions of law # 3 and 4, in # 3 the ALJ's decision

was condemned as arbitrary and capricious on the grounds that no evidence contradicted the opinion of Dr. Reitman that Walker's condition qualified for HCI coverage under § 2.1. In # 4, the trial court ruled that if the ALJ relied on the Ellis letter as probative medical evidence rebutting Dr. Reitman's opinion, then the decision was based solely on objected-to hearsay evidence, a violation of I.C. 4–21.5–3–26(a), and therefore the ALJ's decision was not in accordance with law.

We need not decide whether the ALJ went outside the procedures of I.C. 4–21.5–3–26(a). Either way, denial of the Deaconess claim must be set aside. If the ALJ did rely on the Ellis letter, then the ALJ's decision was arbitrary and capricious because it was based on an unwritten policy purporting to interpret the emergency criteria of § 2.1. On the other hand, if the ALJ did not rely on the Ellis letter, then the decision, in our opinion, was arbitrary and capricious because it was made in disregard of the facts and circumstances of the case without a basis that would lead a reasonable person to the same conclusion. *Kennedy,* 482 N.E.2d at 271.

Apparently, the ALJ did not rely on the Ellis letter—it is not mentioned in the ALJ's decision. Rather, the decision focuses on the medical evidence obtained in Dr. Reitman's testimony at the hearing, and

---

**2.** *Community Care* appears to articulate a common law rule that agency decisions "must be guided by ascertainable standards which are well stated and followed." 523 N.E.2d at 450. In contrast, the holding in *Mugg v. Stanton* relied on a statute, I.C. 4–22–2–2, which stated "[a]ll rules, regulations and other documents ... of policy ... intend[ed] to have the effect or force of law but which are not promulgated ... in conformity with the provisions of this chapter, shall be invalid, void and of no force or effect...." That statute was repealed in 1985. The current statutory scheme defines a "rule" as "an agency statement of general applicability that ... [h]as or is designed to have the effect of law; and ... [i]mplements, interprets, or prescribes: [l]aw or policy; or [t]he organization, procedure, or practice requirements of an agency." I.C. 4–22–2–3. The remainder of I.C. 4–22–2–2 sets out mandatory procedures for promulgating rules. The chapter concludes by stating that a rule not promulgated in conformity with those procedures is invalid and lacks the effect

of law. I.C. 4–22–2–44. In Walker's case, the idea that a suicidal gesture is required to satisfy the emergency criteria of § 2.1 is a rule—it is generally applicable, is designed to have the effect of law, and interprets a law, § 2.1. Nothing in the record or the State DPW's brief suggests that the "gesture rule" was promulgated in conformity with I.C. 4–22–2–2. Therefore, the gesture rule is invalid.

Other cases involving an agency's improper reliance on unpromulgated or unascertainable standards include *Evansville State Hosp. v. Perry* (1989), Ind.App., 549 N.E.2d 44; *Indiana Dep't of Envtl. Management v. AMAX, Inc.* (1988), Ind.App., 529 N.E.2d 1209; *Harrington v. State Bd. of Tax Comm'rs* (1988), Ind.Tax, 525 N.E.2d 360; *Indiana State Bd. of Registration of Architects v. Meier* (1986), Ind.App., 489 N.E.2d 966; *Blinzinger v. Americana Healthcare Corp.* (1984), Ind.App., 466 N.E.2d 1371; and *Commission on Gen. Educ. v. Union Township School of Fulton County* (1980), Ind.App., 410 N.E.2d 1358.

from his notes taken upon his first examination of Walker, on the day of her admission to Deaconess, and notes made on the day she was discharged. This evidence is set out in the ALJ's findings # 19, 20, and 21.

Dr. Reitman was asked whether Walker's condition at the time of her admission was severe enough that the absence of immediate medical attention would probably have resulted in placing her life in jeopardy (paraphrasing § 2.1(a)(1)). Dr. Reitman replied "[v]ery definitely so." Record at 69. That opinion is noted in finding # 19, and nothing more. Dr. Reitman explained that Walker had made a previous suicide attempt, that she had no "backup system," and that he was so concerned about her continuing suicide potential that he kept her in the psychiatric ward for about sixty days, well over the seventeen-day average stay at Deaconess, and that when she was discharged, it was only with the understanding that she would enter the Evansville State Hospital.

In # 20 and 21, the ALJ listed everything from the cross-examination of Dr. Reitman and from his notes that tended to downplay the severity of Walker's condition. Then, in # 22, the ALJ concluded that Walker's condition did not meet HCI requirements.

Although # 22 is designated as a finding of fact in # 23, it is evident that # 22 is a conclusion of law. It is equally evident that # 22 is a conclusion of law derived from undisputed facts, that is, the facts set out in Dr. Reitman's testimony and notes. Because the ALJ's decision is a conclusion of law derived from undisputed facts, we owe it no deference. *See Miller*, 519 N.E.2d 732.

The State DPW argues that if Dr. Reitman's opinion is deemed conclusive, then § 2.1 would be rendered nugatory: "the end result is that the medical criteria has [sic] no meaning, because any admitting doctor will always say such an admission is an emergency." Appellant's Brief at 18. Our answer is that denial of HCI reimbursement is subject to review by an ALJ, a trial judge, this court, and under the discretionary transfer authority of our supreme court. If an ALJ affirms denial, and the courts affirm the ALJ's decision, then no benefits will be paid, and the doctor's opinion will not have been conclusive. The cases are decided one-by-one. *See, e.g., Lutheran Hosp., supra* (patient made two serious suicide attempts within two days of admission to hospital and threatened to do so again; supreme court thought that satisfied § 2.1(a)(1)); *cf. Memorial Hosp. of South Bend, Inc. v. Indiana Dep't of Public Welfare* (1990), Ind.App., 564 N.E.2d 299, 301 (affirming denial of HCI despite physician's testimony that patient was using cocaine in lethal amounts; patient tested negative for cocaine at time of admission).

■ This case is much less clear-cut than either *Lutheran Hosp.* or *Memorial Hosp.* We conclude that the trial court correctly set aside denial of HCI benefits. The State DPW's decision, based on an unwritten policy requiring a suicidal gesture in depression cases, reflected financial rather than medical considerations. Thus, the agency arbitrarily and capriciously followed unpromulgated standards. The ALJ's decision overemphasized the facets of Dr. Reitman's notes that suggested Walker's condition at the time of her admission was not life-threatening. Moreover, the facts set out in finding # 21, that Walker verbalized suicidal thoughts during her stay at Deaconess, but that these thoughts quickly passed, and that she seemed calm and happy when playing a guitar or engaging in group activities, are more consistent with a conclusion that Dr. Reitman's treatment was succeeding than with a conclusion that Walker's suicidal tendency did not amount to an emergency. The Ellis letter acknowledged a "substantial indication of depression with suicidal thoughts...." Dr. Reitman unequivocally concluded that Walker's mental state placed her close enough to the verge of suicide that the absence of immediate medical attention would probably have resulted in placing her life in jeopardy. In our view, the countervailing facts cited in the ALJ's finding # 20 do not warrant an overriding of Dr. Reitman's medical opinion. Thus, the ALJ decided the

case in disregard of its facts and circumstances, and without a basis that would lead a reasonable person to the same conclusion. The trial court correctly set aside the ALJ's decision.

AFFIRMED.

SHIELDS, J., concurs.

RUCKER, J., dissents with opinion.

RUCKER, Judge, dissenting.

I dissent. The majority places considerable emphasis on the letter from Dr. Ellis which indicated in essence and in pertinent part that qualifying emergency medical criteria requires documentation of a suicidal gesture rather than merely suicidal thoughts. While I agree § 2.1 does not require a suicidal "gesture" before authorizing HCI reimbursement, in my view the majority's focus on the Ellis letter is misplaced. Rather, the question here is whether the letter or any statement contained in the letter were included in or made a part of the ALJ's Finding of Fact. If, as the majority seems to concede, "Apparently, the ALJ did not rely on the Ellis letter—it is not mentioned in the ALJ's decision," *opinion*, p. 1328, then we must determine whether the decision of the Board, which adopted the ALJ's denial of benefits, was made pursuant to proper procedures, was based upon substantial evidence, was not arbitrary and capricious, and was not in violation of any constitutional, statutory, or legal principle. *State Board of Tax Comm'rs v. Jewell Grain* (1990), Ind., 556 N.E.2d 920.

According to the majority, the Board's decision was arbitrary and capricious. I cannot agree. An arbitrary and capricious decision on the part of an administrative body is one that is willful and unreasonable, without consideration of the facts or a decision taken without some basis which would lead a reasonable and honest man to such action. *Indiana Bd. of Pharmacy v. Crick* (1982), Ind.App., 433 N.E.2d 32. An agency action is contrary to law where uncontradicted evidence leads to a conclusion opposite that reached by the fact finder. *Indiana & Michigan Electric v. Terre Haute Indus.* (1987), Ind.App., 507 N.E.2d 588, 597, *trans. denied.* From my prospective, the Board's decision in this case was neither arbitrary and capricious nor contrary to law.

The record before us reveals that Dr. Jerome Rietman testified at the administrative hearing and opined Walker suffered from a medical condition with symptoms of sufficient severity that the absence of immediate medical attention would probably place her life in jeopardy. I.C. § 12-5-6-2.1. However, the record before us also shows that Walker's medical records were introduced into evidence at the hearing. Those records reveal that although at the time of her admission into the hospital, Walker was depressed, despondent, and expressed thoughts of suicide, she revealed no delusions or hallucinations, had not formulated any definite plans on how she might harm herself, and whenever she thought of suicide Walker became even more anxious, upset and distraught. Indeed, Walker's thoughts of suicide quickly passed and during her stay in the hospital Walker never attempted to harm herself. The record also indicates that because of Walker's limited response to extensive inpatient treatment, she was advised to transfer to a state hospital for continued care.

The majority assails the ALJ's decision as "overemphasiz[ing] the facets of Dr. Reitman's notes that suggested Walker's condition at the time of her admission was not life-threatening." *Opinion*, p. 1329. I would first point out that these "notes" were part of Walker's medical records which were introduced into evidence and relied upon by the ALJ in reaching its decision. More importantly, the ALJ was duty bound to review and weigh the evidence as a part of its function as a factfinder. When a trial court, in the first instance, or an appellate court, on appeal, reviews the decision of an administrative agency, the court is bound by the findings of fact made by the agency if those findings are supported by substantial evidence. *Hamilton County Dep't of Public Welfare v. Smith* (1991), Ind.App., 567 N.E.2d 165.

The reviewing court may not reweigh the evidence in the process of determining whether the findings are supported by substantial evidence, and this court may not substitute its judgment on factual matters for that of the agency. *Id.* Here, neither the Board nor the ALJ was obligated to weigh the evidence in favor of Dr. Reitman's conclusion that Walker's condition qualified her for HCI coverage.

The purpose underlying the Hospital Care for the Indigent Act is "to make cost-free *emergency medical care* available to indigent persons who suffer serious physical injury, disease or defect." *GCMHC v. Dep't of Public Welfare* (1987), Ind.App., 507 N.E.2d 1019, 1023. (Emphasis added.) The record in this case shows Walker was suffering from depression for several months before she was admitted into Deaconess Hospital. Further, her limited response to treatment prompted a recommendation that Walker continue her care at a state hospital. There is no doubt Walker's hospitalization was appropriate; she was obviously in need of professional care. However, Walker's 60-day treatment at Deaconess Hospital does not qualify as "emergency medical care" which would render her eligible for HCI benefits.

Based on the record before us, I cannot say the decision of the Board in denying Walker HCI benefits was either unreasonable, without consideration of the facts or taken without some basis which would lead a reasonable and honest man to such action. In essence, the Board's decision in my view was neither arbitrary or capricious nor contrary to law.

Accordingly, I would reverse the judgment of the trial court.