**LUTHERAN HOSPITAL OF INDIANA, INC., Appellant–Petitioner,**

v.

**STATE of Indiana, DEPARTMENT OF PUBLIC WELFARE, and Department of Public Welfare of Allen County, Indiana, Appellees–Respondents.**

No. 02A04–9303–CV–109.

Court of Appeals of Indiana, Fourth District.

Nov. 16, 1993.

James A. Federoff, Thomas J. Galanis, Beckman, Lawson, Sandler, Snyder & Federoff, Fort Wayne, for appellant-petitioner.

Pamela Carter, Atty. Gen., Beth H. Henkel, Deputy Atty. Gen., Indianapolis, for appellees-respondents.

CONOVER, Judge.

Petitioner–Appellant Lutheran Hospital of Indiana, Inc. appeals a judgment by the Allen Superior Court affirming a denial of assistance under the Hospital Care for the Indigent Act (HCI) by Respondent–Appellee State of Indiana, Department of Public Welfare. (DPW).

We affirm in part and reverse in part.

Lutheran raises the following issues for our review:

    1. whether DPW's interpretation of HCI was erroneous;

    2. whether DPW's interpretation of HCI discriminated against patients, such as patients Govan, Levanavich, and Pullum, who suffer from acute drug or alcohol abuse or mental illness; and

    3. whether the denial of assistance to patient Owen was in contravention of the plain dictates of HCI.

HCI provides in pertinent part:

A resident of Indiana who meets the income and resource standards established by the state department of public welfare under subsection (c) is eligible for assistance to pay for any part of the cost of care provided in a hospital in Indiana that was necessitated after the onset of a medical condition that manifested itself by symptoms of sufficient severity that the absence of immediate medical attention would probably result in:

(1) placing the person's life in jeopardy;

(2) serious impairment to bodily functions; or

(3) serious dysfunction of any bodily organ or part.

IND.CODE 12–5–6–2.1(a).[1] In each of the cases of the four patients discussed below, Lutheran provided treatment. It appeals the denial of HCI benefits which would have been paid to the hospital.

On December 28, 1988, Rosetta Govan was admitted to Lutheran for treatment related to a nervous breakdown. At the time of admission, Govan was in the midst of a multiple-day cocaine binge. She had also been abusing alcohol and had reported sessions of loss of consciousness. At the time of admission, she needed to be physically restrained. She saw blood on walls and reported auditory hallucinations from relatives. She was treated with anti-psy-

---

**1.** This statute, which was applicable at the time DPW's decision was made, has since been re-pealed. The statute was replaced by IC 12–16–3–1.

chotic and anti-depressant medication and was released on February 9, 1989. An application for HCI assistance was denied for treatments administered after January 20, 1989, because the treatment after this date was not related to the emergency which necessitated her original admission into the hospital.

On September 28, 1989, a hearing was held before an administrative law judge to review the denial of benefits. On February 22, 1990, the administrative law judge made a written recommendation that denial of benefits was proper. The administrative law judge found:

> That the medical evidence substantiates the patient's withdrawal symptoms for which she was hospitalized subsided after the first two weeks and she was medically stable to the extent she was allowed to leave the hospital on January 20, 1989. Therefore, as of January 20, 1989, the condition which prompted the hospitalization, her withdrawal symptoms, had been alleviated.

(R. 186). The State Board and the trial court sustained the decision upon review.

On August 28, 1988, Monica Levanavich was admitted to Lutheran suffering from an exaggerated grief reaction due to the death of her infant that evening. In addition, Levanavich appeared to be intoxicated and suffering from sedative dependency.

Levanavich remained hospitalized at Lutheran until November 12, 1988. An application for HCI assistance was denied for treatments administered after August 30, 1988, because the condition which prompted her hospitalization had been alleviated in that she was then appropriately grieving the death of her baby.

On September 28, 1989, a hearing was held before an administrative law judge to review the denial of assistance. The administrative law judge found the denial of assistance after August 30, 1988, was appropriate. The State Board and the trial court affirmed the administrative law judge's decision.

On January 11, 1989, Frederick Pullum was admitted to Lutheran for treatment of his cocaine addiction. Pullum was discharged on January 31, 1989. An application for HCI assistance was denied when DPW determined his treatment was not in response to a medical emergency.

On January 9, 1990, a hearing was held before an administrative law judge. The administrative law judge affirmed the denial of benefits because Pullum's condition at the time of admission did not require emergency treatment. The State Board and the trial court affirmed the administrative law judge's decision.

On January 8, 1988, Rebecca Owen was admitted to Lutheran complaining of shortness of breath. The diagnosis was "rheumatic valvular heart disease with mitral stenosis." (R. 522). She submitted to surgery to replace her mitral valve with a mechanical valve and she was released from Lutheran on January 23, 1988. An application for HCI assistance was denied because DPW did not consider the surgery to be in response to an emergency.

On April 5, 1989, a hearing was conducted before an administrative law judge. The administrative law judge affirmed the denial of benefits. In so doing, the judge stated:

> That the evidence does not support the onset of a medical condition that manifested itself by symptoms of sufficient severity that the absence of immediate medical attention would probably result in: (1) placing the person's life in jeopardy; (2) serious impairment to bodily functions; or (3) serious dysfunction of any bodily organ or part (470 IAC 11.1–2–1).

(R. 550). The administrative law judge's decision was affirmed on review by the State Board and the trial court.

■■■ Our standard of review for the alleged wrongful denial of benefits by agency action is "whether such action is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." *Lutheran Hospital of Fort Wayne, Inc. (Patient: Michael R. Campbell) v. State, Department of Public Welfare*

(1991), Ind., 571 N.E.2d 542, 544.[2] We do not reweigh the evidence presented to an administrative agency, and we will reverse only if the agency's findings lack the support of substantial evidence or are contrary to law. *Id.*

Lutheran first contends the benefits should have been extended to pay for treatments beyond those administered under emergency conditions. Lutheran asserts such treatments were essential to alleviate the conditions which necessitated hospitalization.

Specifically, Lutheran asserts the "condition" referred to in IC 12–5–6–2.1 in the cases involving Govan, Levanavich, and Pullum, is the underlying mental health problem or addiction, not the specific symptoms causing the immediate hospitalization. Lutheran claims this position is supported by IC 12–5–6–12(b), which provides HCI payments should conclude when the "patient is medically stable and can be safely discharged."

The same argument was made to our supreme court in *Campbell, supra.* The State's response and the court's holding reads:

> ... the State argues that once an HCI application is approved, benefits do not automatically continue until the patient is discharged; there is a limitation on the duration of services provided mandated by the legislature. IND.CODE § 12–5–6–12 provides:
>
> (a) The state department of public welfare shall, with the advice of its medical staff, the department of mental health, and other individuals selected by the administrator of the department, adopt rules under IC 4–22–2 to:
>
> \*    \*    \*    \*    \*    \*
>
> (2) establish limitations consistent with medical necessity on the duration of the services to be provided;
>
> \*    \*    \*    \*    \*    \*

> To the extent possible, rules adopted under this section must be consistent with IC 12–1–7–15(b).
>
> (b) The rules adopted under subsection (a) must include rules that will deny payment for services provided to a patient after the patient is medically stable and can safely be discharged.

This statute was effective July 1, 1986. The regulation referred to in subsection (a) was subsequently promulgated by the state welfare department and provided:

> Financial assistance to eligible hospital patients shall be available, consistent with reasonable medical necessity, until such time as the patient is medically stable and can be safely discharged. Stable means the alleviation of the condition which prompted the hospitalization.

470 IAC 11.1–2–1(b), effective January 1, 1987.

> *Thus, even though a patient may remain hospitalized and may benefit from continuing therapy or counselling, HCI reimbursement is no longer available if the patient is medically stable.* (Emphasis supplied).

571 N.E.2d at 546.

This court addressed the issue in *Lutheran Hospital of Indiana, Inc. v. State, Department of Public Welfare* (1992), Ind. App., 597 N.E.2d 1301, *trans. denied.*[3] In *Archie,* the patients were admitted to the hospital for treatment of symptoms arising from alcohol or drug abuse. Their stay involved a detoxification process and then rehabilitative treatment. The State approved assistance under HCI for only the period involving the detoxification process. In affirming the State's decision, we held:

> Lutheran contends that the patients' drug or alcohol abuse was the underlying *condition* which manifested itself through symptoms of sufficient severity that immediate medical attention was necessary. The State does not argue with this contention. However, Luther-

---

**2.** In order to avoid confusion, this case shall hereinafter be referred to as *Campbell.*

**3.** The three patients involved in this case were Archie, Bushee, and Perrine. In order to avoid confusion with *Campbell,* this case will be referred to hereinafter as *Archie.*

an further argues that benefits under HCI do not end with the termination of the symptoms of the condition but continue until the *condition* is remedied. Lutheran points to 470 I.A.C. § 11–1–2–1(b) which defines "stable" as alleviation of the "condition." Therefore, if "condition" has the same meaning in both contexts, termination does not end until the "condition," which in these cases is either drug or alcohol abuse, is alleviated. If this were true, then HCI would cover the rehabilitation for the three patients, Perrine, Archie, and Bushee.

This Court, while recognizing that the term condition is used in both contexts, does not believe that the legislature intended for the term condition to have the same definition. It has been recognized by the Court that the purpose of HCI is to provide emergency care, not preventative care, for indigent individuals. *See Lutheran Hospital v. Dept. of Public Welfare* (1991), Ind., 571 N.E.2d 542, 544. *Thus, once the emergency ceases, the benefits under HCI terminate. In other words, once the symptoms are alleviated and the patient is medically stable and can be safely discharged, the benefits terminate.*

In support of this interpretation, this Court notes that the [agency] qualified "condition" in the regulation by adding "which prompted the hospitalization." 470 I.A.C. 11.1–2–1(b). *The severe life-threatening symptoms of each patient's condition were what prompted the hospitalization, not the condition itself. This definition is also consonant with the purpose of the HCI to provide emergency care.* Therefore, while the use of the term "condition" in both contexts can mislead one into believing it has the same definition, it is apparent that the legislature intended for "condition" to have two different meanings. (Emphasis supplied).

597 N.E.2d at 1305.

■ In the present case, Govan and Levanavich entered Lutheran with symptoms which necessitated immediate emergency treatment at the hospital. Assistance un-

der HCI was approved to help cover the costs of this emergency treatment. However, the patients also received non-emergency treatment which was rehabilitative in nature. Pursuant to *Campbell* and *Archie*, DPW correctly denied HCI assistance for this beneficial, but uncovered, treatment.

■ Pullum admitted himself to Lutheran for treatment of his drug problem. The evidence indicates there was no emergency at the time of his admission; he required no medication for detoxification. Accordingly, under the reasoning of *Campbell* and *Archie*, DPW correctly denied HCI assistance to cover any of the treatment he was given while at Lutheran.

Lutheran also argues its position is supported by *County Department of Public Welfare of Vanderburgh County v. Deaconess Hospital, Inc.* (1992), Ind.App., 588 N.E.2d 1322, *trans. denied,* an argument considered and rejected by this court in *Archie, supra.* In *Deaconess,* the hospital provided treatment for suicidal tendencies to Dorothy Walker because the attending physician determined there were symptoms of sufficient severity "that the absence of immediate medical attention would have placed her life in jeopardy." 588 N.E.2d at 1325. DPW denied assistance under HCI; however, the trial court remanded for further proceedings because DPW's ruling was based 1) on an unpromulgated regulation authorizing assistance only for treatment proceeded by suicidal "gestures" and 2) an arbitrary policy of filtering out some claims to preserve reimbursement in others. A divided panel of this court affirmed the trial court's decision. In so doing, it held each HCI case must be decided "one-by-one." *Id.* at 1329. The dissent asserted the majority erroneously reweighed the evidence. *Id.* at 1330.

The facts of *Deaconess* differ significantly from those in the present case. In the present case, unlike in *Deaconess,* the denial of benefits was not based upon an unpromulgated regulation or arbitrary policy designed to conserve dwindling funds. Instead, denial was properly based upon the fact the HCI application requested benefits

for non-emergency rehabilitative treatment.

■ Lutheran also contends DPW's interpretation of HCI discriminates against patients who suffer from acute drug or alcohol abuse or mental illness. In *Archie, supra,* we answered the same contention in this manner:

> In response to Lutheran's second issue, this Court cannot agree with Lutheran that the HCI Act discriminates against patients who suffer from acute drug or alcohol abuse. As discussed previously, these patients do qualify for *emergency* medical treatment when their conditions cause symptoms of a life-threatening nature. The HCI Act was passed to provide emergency care, and each of the three patients in this case was provided with emergency care. In actuality, Lutheran is asking this Court to extend the HCI Act for a purpose of which it was not intended, to provide rehabilitative care for patients suffering from drug and alcohol addictions. It is understandable that Lutheran does not feel that hospitals should have to shoulder the burden of rehabilitative care for indigent drug or alcohol addicts; however, this is an issue for the legislature to address, not this Court. (Emphasis in original).

597 N.E.2d at 1306.

We agree with *Archie* as it applies to treatment of drug and alcohol addiction. We also hold that DPW's interpretation of HCI provides HCI benefits covering emergency treatment for symptoms of mental illness. Thus, it does not discriminate against those so afflicted.

■ Finally, Lutheran contends the denial of benefits to cover Owen's surgery is contrary to the evidence. Lutheran points to evidence indicating Owen's heart condition was very serious at the time of admission.

When analyzing the applications of Govan, Levanavich, and Pullum, we briefly stated our standard of review. A fuller statement is required to put our review of Owen's application into context.

■ In reviewing most agency decisions, including decisions from DPW, a court may not conduct a trial *de novo.* IC 4–21.5–5–11. "Thus, courts defer to an agency's factfinding, provided the findings are supported by substantial evidence." *Deaconess, supra,* 588 N.E.2d at 1326. However, a court owes no deference to an agency's conclusions of law, because " '[l]aw is the province of the judiciary.' " *Id. (quoting Board of Trustees of Pub. Employees' Retirement Fund of Ind. v. Miller* (1988), Ind., 519 N.E.2d 732, 733). "When the facts are undisputed, and the question is whether they lead to a certain conclusion, the case presents a question of law, and the courts need not defer to agency decision making." *Id.*

The facts in the present case are undisputed. The physician treating Owen determined she had severe mitral stenosis and her heart had enlarged due to the blockage of one of her mitral valves. At the administrative hearing, the treating physician testified a mitral valve for a person Owen's size had a normal opening of 3.2 to 3.5 square centimeters. Shortness of breath occurs at anything below 1.5 square centimeters and an opening below 1.0 square centimeter indicates a severe valve blockage which usually will result in heart failure without warning. An opening below .75 square centimeters is considered to be "very severe" and "most centers would, without hesitation, recommend removal of the valve, put in a new valving or repairing the valving opening up...." (R. 504). Owen's valve opening was .5 square centimeters, well below the "very severe" stage. The treating physician testified Owen's condition was so serious that she could go into a life-threatening situation "at any time without precipitation of any cause." (R. 506). To further compound the situation, her medical condition created "a possibility of throwing clots off to the circulation, causing a stroke ... [or] atrial fibrillation." (R. 506–507). Owen's medical condition already had enlarged her heart.

Dr. Ellis, the medical director for Medicaid, Indiana, who represented the State's position in the hearing, agreed that the treating physician's analysis of Owen was correct. He also agreed Owen had a "significant stenosis of the heart valve." (R. 510). He further agreed that Owen was susceptible to "a sudden kind of change." (R. 509). However, Dr. Ellis went on to conclude HCI only allows for "emergency" assistance. In his opinion, an emergency exists only when there are indications in addition to blockage, such as further enlargement of the heart or complete failure. In effect, Dr. Ellis testified that Owen needed to be near death or in arrest before she could get HCI assistance in paying for surgery.

As we noted above, our courts have interpreted IC 12–5–6–2.1 to provide HCI benefits for emergency care only, not for preventative care. Accordingly, we held above that HCI assistance was not available to Govan and Levanavich for preventative care provided after alleviation of the initial symptoms necessitating hospitalization. We further held the treatment for Pullum was all preventative in nature. We were able to decide these issues because the services provided to Govan, Levanavich, and Pullum clearly did not come under the "emergency care" requirement of the statute. Owen's case, however, is not so clear.

The definition of "emergency care," as it is used in our case law, must necessarily correspond with the dictates of the statute. *See*, 26 I.L.E. Statutes § 102 (1960). The statute states HCI assistance is available if the symptoms of a medical condition are so severe that the absence of immediate medical attention would probably result in 1) placing the patient's life in jeopardy; 2) serious impairment to bodily functions; or 3) serious dysfunction of a bodily organ or part. Thus, "emergency care" includes services provided even though absence of immediate attention would only *probably*, not directly, result in jeopardy, serious impairment, or serious dysfunction. DPW's definition, as framed by the testimony of

Dr. Ellis, defines "emergency care" largely in terms of "life in jeopardy" considerations, while almost ignoring the other two factors listed in the statute. DPW's definition, as expressed by Dr. Ellis, also ignores the statute's use of "probably." The result in this case is denial of assistance to a patient whose mitral valve would *probably*, if not assuredly, cease to function. Owen was on the very precipice of congestive heart failure, a factor which Dr. Ellis recognized. Denial of funds was not based upon a factual dispute but upon the failure of DPW to give effect to the statute.

We find the DPW's failure to include all the factors of the statute in its definition of "emergency care" as applied to the facts of Owen's application for HCI assistance is contrary to the clear wording of the statute. Thus, it is contrary to law.

We affirm with reference to the determinations of HCI eligibility for Govan, Levanavich, and Pullum. We reverse and remand the determination with reference to Owen for proceedings consistent with this opinion.

MILLER and GARRARD, JJ., concur.