**DEACONESS HOSPITAL, INC.,**
**Appellant–Petitioner,**

v.

**INDIANA DEPARTMENT OF PUBLIC WELFARE, Vanderburgh County Department of Public Welfare, and Shannon Mueller, Appellees–Respondents.**

No. 65A01–9310–CV–322.

Court of Appeals of Indiana,
First District.

April 7, 1994.

Wm. Michael Schiff, Mary Lee Franke, Kahn, Dees, Donovan & Kahn, Evansville, for appellant.

Mary Jane Humphrey, Evansville, Pamela Carter, Atty. Gen., Wendy Messer, Deputy Atty. Gen., Indianapolis, for appellees.

## STATEMENT OF THE CASE

NAJAM, Judge.

Deaconess Hospital, Inc. appeals from the trial court's judgment affirming the Board of the Indiana Department of Public Welfare's decision to deny benefits to Shannon Mueller under the Hospital Care for the Indigent Act ("HCI Act").[1] Deaconess provided treatment to Mueller and then filed an application for HCI benefits for Mueller with the Vanderburgh County Department of Public Welfare ("County DPW") and the Indiana Department of Public Welfare ("State DPW"). The State DPW denied the application for benefits on the grounds that the hospital admission did not meet the criteria specified by state law. After exhausting administrative remedies to no avail, Deaconess sought judicial review in the trial court, which affirmed the Board's denial of benefits. Deaconess appeals from the trial court's judgment in favor of the agencies.

We reverse and remand with instructions.

## ISSUE

We restate the issues presented for review as whether the trial court erred in not finding, as a matter of law, that the Indiana Department of Public Welfare's decision to deny the application for benefits was arbitrary and capricious.

## FACTS

On May 5, 1989, 15 year old Shannon Mueller was brought by her mother to the Deaconess Hospital emergency room. Mueller was married and was the mother of a 10-month-old daughter, but had recently learned that her husband was going to leave her. On the morning of May 5, Mueller was "angry and depressed," and felt suicidal. Record at 185. On the previous day, Mueller had thrown things in her house and beat her head against a wall, threatening suicide. She had "thoughts of slicing her wrists or taking pills" and "hurting her child." Record at 181. Mueller related that she "no longer could take care of her 10-month-old infant daughter because she [the child] cried frequently." Record at 185. In addition, Mueller "could not sleep, had little or no energy, felt weak, sad and exhausted." Record at 185.

The emergency room physician at Deaconess, Dr. Richard Wagner, recommended that Mueller receive emergency medical care. Wagner admitted Mueller to Deaconess' locked psychiatric unit and placed her under constant supervision. Dr. John Longstaff, a Board certified psychiatrist on-call at Deaconess, concurred in Dr. Wagner's recommendation and later examined Mueller himself. Dr. Longstaff testified that Mueller was very depressed and suicidal. He further stated that, in his opinion, if Mueller had not been admitted to Deaconess on May 5, she "probably would have" committed suicide. Record at 176. Dr. Longstaff rated Mueller as the highest possible candidate to commit suicide without immediate medical attention. Mueller remained in treatment at Deaconess until she was released on June 2, 1989, on the condition she would continue her treatment at the State Hospital in Evansville.

On May 8, 1989, Deaconess filed an application for HCI benefits for Mueller with the County DPW. After Mueller was deemed financially eligible for HCI benefits, the application was presented to the medical review team of the State DPW to determine medical eligibility. Without consulting Mueller's treating physicians, the State DPW denied the application for benefits because "the hospital admission does not meet the emergency criteria specified by state law." Record at 153.

Deaconess appealed the State DPW's denial of HCI benefits to an Administrative Law Judge ("ALJ") of the State DPW. A hearing was held on June 26, 1990, where Deaconess presented the deposition testimony of Dr. Longstaff. In Dr. Longstaff's opinion, Mueller's medical condition was of sufficient severity that the absence of immediate medical attention would have placed her life in jeopardy. However, Dr. Davis W. Ellis, a Medi-

---

1. IND.CODE § 12–5–6–1, *et seq.* (repealed 1992, now IND.CODE § 12–16–2–1, *et seq.*).

cal Director with the State Department of Public Welfare who is not a Board certified psychiatrist, testified that Mueller's medical condition upon admission did not constitute a "qualifying emergency condition" in order to receive HCI benefits. He stated that "suicidal ideation," the thought or contemplation of suicide, is not a qualifying condition but that "suicidal gesture," the acting out or attempt of suicide, is necessary to receive HCI benefits. Record at 124–25. On September 24, 1990, the ALJ entered its findings of fact and sustained the denial of benefits to Mueller.

Deaconess then appealed the ALJ's decision to the Board of the Indiana Department of Public Welfare. Shortly thereafter, the Board sustained the ALJ's denial of benefits. On February 27, 1991, after having exhausted its administrative remedies, Deaconess filed a Verified Petition for Judicial Review with the Vanderburgh Superior Court. The case was venued to Posey County. The court heard oral argument and entered its findings of fact, conclusions of law, and judgment affirming the Board's decision to deny the application for benefits. We will state additional facts where necessary.

## DISCUSSION AND DECISION

### Standard of Review

■■■ " 'Judicial review of an administrative decision is limited to whether the agency possessed the jurisdiction over the subject matter, and whether the agency's decision was made pursuant to proper procedure, was based upon substantial evidence, was not arbitrary and capricious, and was not in violation of any constitutional, statutory, or legal principle.' " *County Department of Public Welfare v. Deaconess Hospital, Inc.* (1992), Ind.App., 588 N.E.2d 1322, 1327, *trans. denied,*[2] (quoting *State Bd. of Tax Comm'rs v. Jewell Grain Co.* (1990), Ind., 556 N.E.2d 920, 921). Pursuant to Indiana Code § 4–21.5–5–14, a trial court may not conduct a trial *de novo* when reviewing an agency decision. On judicial review, courts defer to an agency's factfinding, provided the findings

are supported by substantial evidence. *Id.* "However, a court owes no deference to an agency's conclusions of law." *Id.* When the facts are undisputed, and the question is whether those facts lead to a certain conclusion, the case presents a question of law and the courts need not defer to agency decision making. *Id.*

### State DPW's Denial of HCI Benefits

■ Deaconess asserts that the trial court erred in concluding that the State DPW's determination to deny benefits to Mueller met the medical eligibility standards of the HCI Act. Deaconess contends that the agency's decision was arbitrary and capricious because it was based on an unpromulgated standard.

At the time of Mueller's admission to Deaconess, section 2.1 of the HCI Act provided:

"(a) A resident of Indiana who meets the income and resource standards established by the [State DPW] ... is eligible for assistance to pay for any part of the cost of care provided in a hospital in Indiana that was necessitated after the onset of a medical condition that *manifested itself by symptoms of sufficient severity that the absence of immediate medical attention would probably result in:*

(1) placing the person's life in jeopardy;

(2) serious impairment to bodily functions; or

(3) serious dysfunction of a bodily organ or part."

IND.CODE § 12–5–6–2.1 (1989) (emphasis added). Further, the Act provided that the hospital make application for HCI benefits, on behalf of the patient, to the county DPW of the county in which the hospital is located. IND.CODE § 12–5–6–4(a). Upon application, a determination of benefit eligibility is made by the county DPW. IND.CODE § 12–5–6–5(a). If the county DPW makes a determination of non-eligibility, any affected person may appeal to the State DPW, which must hold an administrative hearing and render its own determination. IND.CODE

---

**2.** We note that our decision in *County DPW v. Deaconess,* although on different facts, involved the same parties, excluding Mueller, and sub                                stantially similar questions of law as are presented here. We shall refer to that decision as *Deaconess I.*

§ 12–5–6–8(a). The State DPW's decision is then subject to judicial review.

Here, the County DPW deemed Mueller financially eligible to receive HCI benefits. The application was then presented to the State DPW's medical review team for a determination of medical eligibility. The State DPW denied Mueller's application, stating that her "hospital admission does not meet the emergency criteria specified by state law [section 2.1]." At the administrative hearing, Dr. Ellis explained that the State DPW denied Mueller HCI benefits based on an application of the State's qualifying emergency medical criteria to Mueller's condition and symptoms. Dr. Ellis stated:

> "this was a behavioral problem, was a young adult who had been because of situational problems at home according to the information *had suicidal ideation.* There were some behaviorial [sic] consideration, but as presented they were not considered suicidal gestures. The HCI criteria as applied to this kind of mental health issue, cases of depression or behavioral disorder had to do with, but then have suicidal connotation, HCI criteria addresses the suicidal gesture which might be cutting themselves, medication, whatever, overdosing, considers those emergency criteria and qualifying for hospitalization under the HCI criteria. *Suicidal ideation as such is not considered emergency qualifying criteria. . . .*"

Record at 120 (emphasis added). Thus, in order to qualify for HCI benefits upon admission involving suicidal considerations, the criteria used by the State DPW require evidence of a suicidal gesture, not ideation alone. In other words, as Deaconess asserts, "regardless of whether a suicidal person exhibits symptoms which satisfy the medical criteria of [section 2.1], the State will deny funding unless the patient actually makes an attempt to kill herself!" Brief of Appellant at 11–12.

In the present case, as we concluded in *Deaconess I,* "the State DPW based its medical review opinion on an unpromulgated standard." *Deaconess,* 588 N.E.2d at 1327. Dr. Ellis testified that Mueller's application for HCI benefits was denied because she did not exhibit symptoms of suicidal gesture but only suicidal ideation, and suicidal ideation is not considered qualifying emergency medical criteria. Contrary to the State DPW's unpromulgated criteria, section 2.1 of the Act does not require a suicidal gesture before authorizing HCI benefits. As applied to these circumstances, section 2.1 only requires "symptoms of sufficient severity" such that "the absence of immediate medical attention would probably result in: (1) placing the person's life in jeopardy." IND.CODE § 12–5–6–2.1(a)(1). Further, the suicidal gesture requirement is not found in regulations adopted pursuant to section 2.1, which merely restate the statute. *See* Indiana Administrative Code, title 470, rule 11.1–2–1 (1989). Therefore, in accordance with our holding in *Deaconess I,* the State DPW's denial of benefits was arbitrary and capricious. *See Deaconess,* 588 N.E.2d at 1327–28.

We understand the State's concern that this is an inherently difficult area within which to promulgate rules or standards. However, as we noted in *Deaconess I,* such written standards are necessary for at least two reasons: "first, parties are entitled to fair notice of the criteria by which their petitions will be judged by an agency, and second, judicial review is hindered when agencies operate in the absence of established guidelines." *Id.* at 1327 (citing *Community Care Centers, Inc. v. Indiana Department of Public Welfare* (1988), Ind.App., 523 N.E.2d 448, 450). "An agency that reaches a conclusion in the absence of 'ascertainable standards which are well stated and followed' may have acted arbitrarily and capriciously." *Id.*

The State DPW clearly based its decision on unwritten qualifying emergency medical criteria. We hold that the State DPW acted in an arbitrary and capricious manner, as a matter of law, when it denied Mueller HCI benefits on the basis of an unpromulgated standard requiring evidence of a suicidal gesture. When reviewing an agency decision, the trial court may not substitute its judgment as to the weight of the evidence as long as there is substantial evidence to support that decision, but "[i]n order to satisfy due

process, *an administrative decision must be in accord with previously ascertainable standards.*" *See Community Care Centers,* 523 N.E.2d at 450. (emphasis in original). Here it was not. Therefore, the trial court erred in sustaining the agency action.

The judgment is reversed, and we remand to the trial court with instructions to enter judgment for Deaconess and to remand to the Board of the Indiana Department of Public Welfare for further proceedings and a decision on the Deaconess application for HCI benefits consistent with this opinion.

Reversed.

BAKER and STATON, JJ., concur.